The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AUXIER FINANCIAL GROUP LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>JP MORGAN CHASE BANK, N.A.; Bank of )<br>America N.A. as Successor by Merger to )<br>LASALLE BANK N.A. as TRUSTEE for )<br>Washington Mutual Mortgage Pass-through )<br>Certificates WaMu Series 2007-OA4 Trust, and )<br>for Washington Mutual Mortgage Pass-Through )<br>Certificates MWALT Series 2007 OC-1 Trust, )<br><br>Defendants. ) | No. C 10-2070 MJP<br><br>**DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT**<br><br>***Note on Motion Calendar:*<br>Friday, December 30, 2011** |

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

    A.   Initial Property Ownership. ............................................................................. 2

    B.   The Contracts with IBB&A. ............................................................................ 3

    C.   Mr. Greene's Recent Communications With Mr. Auxier................................ 5

    D.   Present Property Ownership and Status........................................................... 5

III. ARGUMENT ........................................................................................................... 6

    A.   Plaintiff Does Not Have Standing to Pursue These Claims, And, Consequently, The Court Lacks Subject Matter Jurisdiction. ................................................................ 7

        1.   The Sale Agreement Did Not Give Plaintiff An Interest in the Property. ..................... 8

            a.   Plaintiff Is Not A Party To the Sale Agreement. ...................................... 8

            b.   The Sale Agreement Fails Because It Does Not Identify the Purchase Price, An Essential Term. ....................................................................................... 9

            c.   The Sale Agreement Is Not A Deed. .................................................... 10

    B.   At Best, The Sale Agreement Is An Executory Contract That Fails Because IBB&A Did Not Perform. ........................................................................................................... 11

        1.   The Loan Has Not Been Paid Off, and the Sale Agreement Expired.......................... 11

        2.   Under Washington's Deed of Trust Act, Chase Is Under No Duty to Accept Payment From Plaintiff To Cure Mr. Sellars's Default.................................................. 12

    C.   Alternately, the Court Should Dismiss The Claims Because There Are No Genuine Issues of Material Fact......................................................................................................... 14

        1.   The Identity of the Trust That Owns the Loan Could Not Affect Plaintiff's Rights... 15

            a.   Recording Of Assignments Also Does Not Affect the Lender-Borrower Relationship or Plaintiff............................................................................. 15

            b.   Securitization of the Loan Does Not Affect Plaintiff. ............................................. 16

        2.   No Foreclosure Took Place and There is No Claim For Wrongful Foreclosure Initiation.................................................................................................. 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

3.     Plaintiff Does Not Offer Evidence Supporting Any of the Elements of a Claim for Slander of Title. ............................................................... 18

4.     Plaintiff's CPA Claim Fails Because He Cannot Show an Unfair or Deceptive Act, a Public-Interest Impact, or Causation. ................................. 19

   a.     Plaintiff Does Not Identify An Unfair or Deceptive Act. ....................................... 19

   b.     Plaintiff Does Not Identify An Impact on the Public Interest. .............................. 20

   c.     Plaintiff Does Not Identify Any Injury Or Any Causal Link Between Defendants Acts and Injury. ............................................................... 21

5.     There Is No Basis For An Award of Declaratory Relief. ............................................. 21

6.     The Court Should Dismiss Plaintiff's Request For Injunctive Relief Because There Is No Valid Basis For This Relief. ........................................... 22

   a.     Plaintiff Is Not Entitled to A Permanent Injunction. ................................................ 22

   b.     Plaintiff Is Also Not Entitled to Preliminary Injunctive Relief. ............................. 23

      (1)     Plaintiffs Cannot Establish Irreparable Injury. ................................................. 23

      (2)     Plaintiff Has Not Alleged Facts Suggesting a Likelihood of Success on the Merits. 24

IV. CONCLUSION ............................................................... 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................................................................23

*Allen v. Wright*,
468 U.S. 737 (1984)........................................................................................................8

*Bain v. OneWest Bank, F.S.B.*,
2011 WL 917385 (W.D. Wash. 2011)..........................................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................7

*Earth Island Inst. v. U.S. Forest Serv.*,
442 F.3d 1147 (9th Cir. 2006) ....................................................................................24

*Engel v. First Am. Title*,
2010 WL 3819372 (W.D. Wash. 2010)........................................................................18

*Fed. Nat'l Mortg. Assoc. v. Wages*,
2011 WL 5138724 (W.D. Wash. Oct. 28, 2011) ......................................................9, 14

*Henderson v. GMAC Mortgage*,
2008 WL 1733265 (W.D. Wash. 2008), *aff'd* 347 Fed. Appx. 299 (9th Cir. 2009) ..............17

*In re Brazier Forest Prod. Inc.*,
921 F.2d 221 (9th Cir. 1990) .........................................................................................7

*In re Jacobson*,
402 B.R. 359 (Bankr. W.D. Wash. 2009).................................................................8, 16

*In re United Home Loans*,
71 B.R. 885 (W.D. Wash. 1987)....................................................................................15

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.*,
793 F.2d 1100 (9th Cir. 1986) .......................................................................................7

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994)........................................................................................................6

*Kotok v. Homecomings Fin., LLC*,
2009 WL 1652151 (W.D. Wash. 2009)....................................................................23, 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Leisure Time Sports v. Wolfe*,
    194 B.R. 859 (9th Cir. BAP 1996) ............................................................... 16

*Lipton-U. City, LLC v. Shurgard Storage Centers, Inc.*,
    454 F.3d 934 (8th Cir. 2006) ...................................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................. 7, 8

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..................................................................................... 7

*McKenna v. Commonwealth United Mortg.*,
    2008 WL 4379582 (W.D. Wash. 2008)........................................................ 21

*Mikhay v. Bank of Am., N.A.*,
    No. 2:10-cv-01464 RAJ, 2011 WL 167064 (W.D. Wash.. Jan 12, 2011)............... 18

*Minnick v. Clearwire US LLC*,
    683 F.Supp.2d 1179 (W.D. Wash. 2010) ..................................................... 20

*Pfau v. Wash. Mut. Inc.*,
    2009 WL 484448 (E.D. Wash. 2009) ........................................................... 17

*Safe Air For Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................... 6

*Schmier v. U.S. Ct. App. for the Ninth Cir.*,
    279 F.3d 817 (9th Cir. 2001) ........................................................................ 8

*Selkowitz v. Litton Loan Serv., LP*,
    2010 WL 3733928 (W.D. Wash. 2010)......................................................... 18

*T.W. Elect. Serv. v. Pac. Elec. Contractors Assoc.*,
    809 F.2d 626 (9th Cir. 1987) ........................................................................ 7

*Thornhill Pub. Co. v Gen. Tel. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ........................................................................ 6

*Vawter*, 707 F. Supp. 2d at 1123-24 ...................................................... 17, 18

*Veal v. Am. Home Mortg. Serv., Inc.*,
    450 B.R. 897 (9th Cir. B.A.P. 2011) ............................................................ 17

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...................................................................................... 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**STATE CASES**

*Bigelow v. Mood*,
  56 Wn.2d 340 (1960) .................................................................................10

*Brown v. Brown*,
  157 Wn. App. 803 (2010) ..........................................................................20

*Brown v. Safeway Stores, Inc.*,
  94 Wn.2d 359 (1980) .................................................................................18

*Fidelity & Deposit v. Ticor*,
  88 Wn. App. 64 (1997) ..............................................................................16

*Friedl v. Benson*,
  25 Wn. App. 381 (1980) ...........................................................................9, 10

*GMH Assoc. v. Prudential Realty Group*,
  752 A.2d 889 (Pa. Super. 2000) .................................................................10

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) .....................................................................19, 20, 21

*Henery v. Robinson*,
  67 Wn. App. 277 (1992) .............................................................................21

*Howell v. Inland Empire Paper Co.*,
  28 Wn. App. 494 (1981) .............................................................................11

*Indoor Billboard Wash., Inc. v. Integra Telecom of Wash.*,
  162 Wn.2d 59 (2007) .......................................................................19, 21, 22

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  152 Wn.2d 171 (2004) ...............................................................................11

*Kucera v. Washington Dep't of Trans.*,
  140 Wn.2d 200 (2000) ...............................................................................22

*Mid-Town Ltd. P'ship v. Preston*,
  69 Wn. App. 227 (1993) .............................................................................12

*Nguyen v. Doak Homes, Inc.*,
  140 Wn. App. 726, 167 P.3d 1162 (2007) ..................................................20

*Ross v. Johnson*,
  171 Wash. 658 (1933) ................................................................................16

*Saunders v. Lloyd's of London*,
  113 Wn.2d 330 (1989) ...............................................................................20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Schultz v. Werelius*,
  60 Wn. App. 450 (1991) ...............................................................................13, 14

*SS-II, LLC v. Bridge St. Assoc.*,
  977 A.2d 189 (Conn. 2009) ..................................................................................10

*Wash. Fed'n of State Emp. v. State*,
  99 Wn.2d 878.....................................................................................................22, 23

**STATE STATUTES**

RCW 61.24.040 .............................................................................................................23

RCW 61.24.090 .......................................................................................................13, 14

RCW 62A.3-205(b) ..................................................................................................16, 22

RCW 62A.3-301 ...........................................................................................................17

RCW 64.04.010 ...........................................................................................................10

RCW 65.08.070 ...........................................................................................................15

Real Estate Contract Forfeiture Act, RCW ch. 61.30.............................................14

**RULES**

Fed. R. Civ. P. 11.........................................................................................................16

Fed. R. Civ. P. 12(b)(1).................................................................................................6

Fed. R. Civ. P. 17(a)(1).................................................................................................7

Fed. R. Civ. P. 56.........................................................................................................14

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. III ....................................................................................................7, 8

**OTHER AUTHORITIES**

https://www.snoco.org/proptax/(lhwxge453hdem0zqvv2r5o45)/search.aspx?parcel_num
  ber=00538000016202 ....................................................................................................5

www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf .............................3

www.sec.gov/Archives/edgar/data/1317069/000127727707000286/fwploantapewamu07
  _oa4.htm ..........................................................................................................................3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

www.sec.gov/Archives/edgar/data/1396435/000127727707000357/exh41to8kpsawamu0
   7_oa4.htm, § 2.05 ......................................................................................................................3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.   INTRODUCTION

Plaintiff Auxier Financial ("Auxier") seeks to restrain the nonjudicial foreclosure of a Deed of Trust recorded against property it does not own and has no interest in, and also seeks damages stemming from Defendants' attempt to foreclose on that property.  The Court should dismiss Plaintiff's claims and enter summary judgment in favor of Defendants for two reasons.

***First***, ***Plaintiff has no interest in the property*** at issue in this lawsuit and thus lacks standing to bring these claims. Because Plaintiff lacks standing, the Court lacks subject matter jurisdiction to hear these claims. Auxier alleges it acquired an interest in real property (that is the focus of this lawsuit) via an agreement between three ***other*** parties; regardless, that "agreement" was an "agreement to agree" and not a binding contract because it fails to identify a material term (price), and is not in the form of a deed (as required by Washington law). But even if the "agreement" were valid, it is at best an executory contract with a condition precedent that was never fulfilled (sale of the property). Because that condition precedent was not satisfied, the sale agreement became legally defunct upon its termination date of April 30, 2011. The current owners of the property are Joseph A. Sellars and Gregory Greene, who have owned the property since 2007, and who both agree that Plaintiff has no interest in the property.

***Second***, the Court should enter summary judgment in Defendants' favor because Plaintiff's claims fail either as a matter of law or because Plaintiff has no evidence to support the essential elements of its claims. Plaintiff complains that in connection with Mr. Sellars's prior defaults on the loan secured by the property, that the beneficiary assigned the Deed of Trust first to one securitized trust (in 2008) and then to a different trust (in 2010). Defendants admit that the first assignment was a mistake, but because Chase has held the underlying Note (endorsed in blank) during all relevant time periods (as the agent for the relevant Trust), it has been the holder with the right to foreclose, making any earlier assignment a harmless error that has in no way prejudiced anyone (let alone Plaintiff, a stranger to the Note and Deed of Trust). Plaintiff cannot bring a claim for wrongful foreclosure, as Washington does not recognize a cause of action for the wrongful initiation of foreclosure. Finally, Plaintiff has no evidence supporting the elements of its CPA claim, nor can it offer evidence justifying an award of injunctive or declaratory relief.

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 1
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

## II.    STATEMENT OF FACTS

### A.    Initial Property Ownership.

On or about February 21, 2007, Gregory Greene and Joseph T. Sellars purchased real property having a common address of 2525 Center Road, Everett, Washington 989024 (the "Property"). Greene Decl. ¶ 1; Sellars Decl. ¶ 2. Mr. Greene and Mr. Sellars acquired their interest in the Property via a quitclaim deed recorded in Snohomish County under auditor number 200702210632.[1] Greene Decl. ¶ 2 & Ex. A; Sellars Decl. ¶ 2 & Ex. B. Neither Mr. Greene nor Mr. Sellars is a party to this action.  On or about February 23, 2007, Mr. Sellars borrowed $298,000 from Washington Mutual Bank, FA ("WaMu") (the "Loan") and secured the Loan with the Property. Sellars Decl. ¶ 3 & Ex. C. The Deed of Trust securing the Loan was recorded in Snohomish County on February 27, 2008, under auditor number 200702270788, and (pursuant to statutory requirements) bears the signatures of both Mr. Sellars and Mr. Greene.  Sellars Decl. ¶ 3 & Ex. C; Greene Decl. ¶ 3 & Ex. B. Mr. Sellars's Note was subsequently endorsed in blank, and has been held by Chase at all times relevant to the issues before the Court.  An excerpt of the Note, with endorsement, is as follows:



---

[1] LB Enterprises & Foundation Financial Partners LLC, an entity owned by Mr. Sellars and Mr. Greene, acquired an interest in the Property in 2006. Sellars Decl. ¶ 2 & Ex. A.

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 2
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    *See* Mirzoyan Decl. ¶ 2 & Ex. A.  Chase has possessed the Note since it acquired certain assets of

2    Washington Mutual Bank from the FDIC, on September 25, 2008. Mirzoyan Decl. ¶ 2

3         No documents have been recorded in Snohomish County which purport to deprive Mr.

4    Sellars or Mr. Greene of their interest in the Property. *See* Sellars Decl. ¶¶ 14-15. Nor has any

5    document been recorded that purports to vest Plaintiff with any interest in the Property. Although

6    a Memorandum of Contract memorializing an "unrecorded Contract for Sale and Purchase of

7    Property [ ], dated March 19th, 2009" was recorded in Snohomish County on April 20, 2009, (the

8    "Memorandum"), it states only that Mr. Sellars and Mr. Greene "agreed to sell and ["Auxier

9    Financial Group LLC dba International Business Brokers & Affiliates"] agreed to buy the

10   Property upon the terms and conditions set forth in the Contract, which terms and conditions are

11   incorporated in this Memorandum by reference."[2] Greene Decl. ¶ 5 & Ex. C; Sellars Decl. ¶ 7 &

12   Ex. E. The terms of the underlying contract, addressed below, also do not vest Plaintiff with any

13   ownership interest in the Property. *See* Sellars Decl. ¶¶ 14-15; Greene Decl. ¶¶ 9-10.

14      **B.**    **The Contracts with IBB&A.**

15        In early 2009, Heidi Brown-Velez, an acquaintance of Mr. Sellars, introduced him to Josh

16   Auxier. Sellars Decl. ¶ 5. At that time, International Business Brokers & Affiliates ("IBB&A")

17   employed both Ms. Brown-Velez and Mr. Auxier, who informed Mr. Sellars that IBB&A was

18   interested in purchasing the Property and converting it to mini-storage units. *Id.* On March 19,

19   2009, Mr. Sellars and Mr. Greene entered into a Residential Real Estate Purchase and Sale

20   Agreement (the "Sale Agreement") with IBB&A. Sellars Decl. ¶ 6 & Ex. D. Greene Decl. ¶ 4 &

21   Ex. C. Generally, the Sale Agreement provided that IBB&A would provide funds sufficient to

22   satisfy Mr. Greene's and Mr. Sellars's obligations under the Loan, in exchange for the Property.

23   Sellars Decl. ¶ 6 & Ex. D; Greene Decl. ¶ 4 & Ex. C. By 2009, Mr. Greene and Mr. Sellars

24   realized the Property was a bad investment and wanted to wash their hands of it, so they could

25   focus their attention on other properties. Sellars Decl. ¶ 6. Under the terms of the Sale Agreement,

26

27   [2] Chase disputes that Plaintiff Auxier Financial Group, LLC, does, in fact, conduct business as "International
    Business Brokers & Affiliates." This issue will be further addressed below in section III(A)(1)(a).

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 3
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

the parties agreed that once IBB&A paid the Loan in full, Mr. Greene and Mr. Sellars would transfer their interest in the Property to IBB&A for a price to be determined later. Greene Decl. ¶ 4 & Ex. C; Sellars Decl. ¶ 6 & Ex. D. Until IBB&A satisfied the Loan in full, IBB&A agreed to make monthly loan payments; IBB&A was also entitled to income generated by the Property and agreed to manage the Property. Sellars Decl. ¶ 6; Greene Decl. ¶ 4. Mr. Sellars and Mr. Greene did not intend to transfer any ownership interest in the Property until IBB&A paid the Loan in full, and this is evidenced in the Sale Agreement by the "Possession Date" being "[u]pon satisfaction of underlying debt." Sellars Decl. ¶ 6 & Ex. D; Greene Decl. ¶ 4 & Ex. C. At no time did Mr. Sellars inform Chase about the Sale Agreement. Sellars Decl. ¶ 6. On April 14, 2009, Mr. Sellars and Mr. Greene signed a document titled Memorandum of Contract, which was subsequently recorded in Snohomish County. Sellars Decl. ¶ 7 & Ex. E; Greene Decl. ¶ 5 & Ex. D. The Memorandum of Contract references an "unrecorded Contract for Sale and Purchase of Property"—the Sale Agreement. Sellars Decl. ¶ 7 & Ex. E; Greene Decl. ¶ 5 & Ex. D.

But after one year, IBB&A had *not* paid off the Loan.  *See* Sellars Decl. Ex. F; Greene Decl. Ex. E. Mr. Sellars and Mr. Greene thus agreed to discuss providing IBB&A with additional time to satisfy its obligations under the Sale Agreement. Sellars Decl. ¶ 9; Greene Decl. ¶ 6 & Ex. E. Thus, in March 2010, Mr. Greene executed and initialed the Amendment to Purchase & Sales [*sic*] Agreement (the "Amendment"). Although Mr. Sellars initialed the Amendment, he did *not* execute it. Sellars Decl. ¶ 9 & Ex. F. And although the Amendment purports to extend the deadline for IBB&A to satisfy the Loan in full until "April 31 [*sic*], 2011," that extended deadline was added to the Amendment *after* IBB&A sought Mr. Sellars's signature. *Id.* The closing date was adjusted to 90 days after IBB&A paid off the Loan or after the recording of a Reconveyance of the Deed of Trust. *Id.* Ex. F; Greene Decl. Ex. E.

Mr. Greene entered into the Sale Agreement and Amendment with IBB&A, without meeting any of the principals of IBB&A. Greene Decl. ¶ 7. Mr. Sellars met Mr. Auxier a few times. Sellars Decl. ¶ 11. Mr. Greene was introduced to IBB&A by a real estate associate of his, "Bird Dog" Bill, who he sometimes did business with. *Id.* On March 19, 2009, Mr. Sellars and

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 4
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Mr. Greene met with Bird Dog Bill at an escrow agent's office to sign the Sale Agreement. *Id.* At no time during the negotiations did anyone represent that Mr. Greene was actually doing business with Plaintiff Auxier Financial Group, LLC. *Id.* At all times during these transactions, Mr. Sellars believed he was doing business with IBB&A. Sellars Decl. ¶ 11.

### C.   Mr. Greene's and Mr. Sellars's Recent Communications With Mr. Auxier.

In mid-2010, Josh Auxier met with Mr. Sellars and asked him to quitclaim his interest in the Property to Mr. Auxier. Sellars Decl. ¶ 12. Mr. Sellars refused and left the meeting without transferring any interest in the Property to Mr. Auxier or Auxier Financial. *Id.* Then, a few months ago, Mr. Sellars contacted Mr. Auxier after Mr. Sellars received a subpoena in this lawsuit. *Id.* ¶ 13. Mr. Auxier stated his belief that Mr. Sellars and Mr. Greene were "obligated" to convey their title to the Property to Mr. Auxier. *Id.* Again, Mr. Sellars disagreed and refused. *See id.* ¶¶ 14-15.

Similarly, about six months ago, Josh Auxier contacted Mr. Greene claiming he was the rightful owner of the Property. Greene Decl. ¶ 8. Although Mr. Auxier claimed to be the owner of the Property, he asked Mr. Greene to quitclaim his interest in the Property to Mr. Auxier. *Id.* Mr. Greene refused and suggested that Mr. Auxier make an offer on the Property, if he wanted Mr. Greene to relinquish his interest. *Id.* Mr. Auxier subsequently offered Mr. Greene $1,000 in exchange for Mr. Greene quitclaiming his interest in the Property to Mr. Auxier. *Id.* Again, Mr. Greene refused. *Id.* Mr. Greene and Mr. Sellars therefore retained ownership of the Property.[3]

### D.   Present Property Ownership and Status.

To date, neither IBB&A nor Auxier Financial has paid off the Loan, which remains in default and subject to nonjudicial foreclosure. Sellars Decl. ¶ 14. As a result, the Sale Agreement and Amendment expired on April 30, 2011, and Mr. Greene and Mr. Sellars own the Property. *Id.* ¶ 15. Plaintiff filed this action to prevent Defendant's enforcement of its contractual rights under the Deed of Trust with Mr. Sellars and Mr. Greene.

---

[3] This fact is verifiable on the County Assessor's website, which still lists Mr. Greene and Mr. Sellars as owners. *See* https://www.snoco.org/proptax/(lhwxge453hdem0zqvv2r5o45)/search.aspx?parcel_number=00538000016202.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### III.   ARGUMENT

Federal Rule of Civil Procedure Rule 12(b)(1) provides for motions to dismiss for lack of subject matter jurisdiction. A jurisdictional attack under Rule 12(b)(l) may be facial or factual. *See Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*  Here, the allegations in the Complaint are contradicted by the documents they reference. Defendants are therefore mounting a factual attack on the jurisdiction question. "The court ***need not presume the truthfulness*** of the plaintiff's allegations." *Id.* at 1039. The burden of proof on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is on Plaintiff — the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("burden of establishing [jurisdiction] rests upon the party asserting jurisdiction"); *Thornhill Pub. Co. v Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In situations in which the "jurisdictional issue and substantive issues…are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits," summary judgment is the appropriate means of resolving all issues. *Safe Air for Everyone*, 373 F.3d at 1040.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has shown the absence of a disputed issue of fact, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  In fact, "the moving party may simply point to the absence of evidence to support the nonmoving party's case." *In re Brazier Forest Prod. Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). The non-movant cannot state merely that he will discredit his opponent's evidence at trial. *T.W. Elect. Serv. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Conclusory

1    statements, speculation, personal beliefs, and unsupported assertions are insufficient to withstand

2    a summary judgment motion, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife*

3    *Fed'n*, 497 U.S. 871, 888-89 (1990).

4        **A.**    **Plaintiff Does Not Have Standing to Pursue These Claims, And, Consequently, The Court Lacks Subject Matter Jurisdiction.**

5        The Court should dismiss Plaintiff's Complaint and enter summary judgment for

6    Defendants because the documents relied on in the Complaint and the testimony of both Mr.

7    Sellars and Mr. Greene (the ***actual*** owners of record of the Property) conclusively establish that

8    Plaintiff does not have ***any*** interest in the Property. As such, Plaintiff lacks standing to pursue any

9    claims arising from the Property or the loan that financed the purchase of the Property. "An action

10   must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Because

11   Plaintiff's allegation that it acquired an interest in the Loan on March 19, 2009, is refuted by the

12   documents it relies on in its Complaint, as well as Mr. Sellars's and Mr. Greene's testimony,

13   Plaintiff is not a real party in interest and lacks standing to pursue this lawsuit.

14       "[T]he core component of standing is an essential and unchanging part of the case-or-

15   controversy requirement of Article III," from which federal courts derive their subject matter

16   jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party seeking to avail

17   itself of the federal courts has the burden of establishing standing. *Id*. at 561; *see also Whitmore v.*

18   *Arkansas*, 495 U.S. 149, 155 (1990) ("The litigant must clearly and specifically set forth facts

19   sufficient to satisfy these Art. III standing requirements."); *Schmier v. U.S. Ct. App. for the Ninth*

20   *Cir.*, 279 F.3d 817, 821 (9th Cir. 2001) ("The party seeking to invoke the jurisdiction of the

21   federal courts has the burden of alleging specific facts sufficient to" prove standing). "[T]he

22   irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2)

23   causation, and (3) redressability.  *Lujan*, 504 U.S. at 560. An injury in fact is "an invasion of a

24   legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not

25   conjectural or hypothetical." *Id*. (citations omitted).

26       "Standing doctrine embraces several judicially self-imposed limits on the exercise of

27   federal jurisdiction, ***such as the general prohibition on a litigant's raising another person's***

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 7
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   *legal rights*." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added).  For the court to have

2   jurisdiction, Plaintiff must have both constitutional standing and "prudential standing." *Id.* "[A]

3   party without the legal right under applicable substantive law to enforce the obligation at issue . . .

4   lacks prudential standing." *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009). The

5   Court should dismiss Plaintiff's claims because Plaintiff lacks both constitutional and prudential

6   standing. Plaintiff does not have constitutional standing because it was not harmed by Defendants,

7   and, in any event, it cannot seek redress for any alleged harms arising from the Property because it

8   does not have any interest in the Property. Plaintiff therefore lacks prudential standing.

9           **1.**      **The Sale Agreement Did Not Give Plaintiff An Interest in the Property.**

10       Plaintiff does not having standing to plead these claims because Plaintiff does not have

11   *any* ownership or possessory interest in the Property. The Sale Agreement did not vest Plaintiff

12   with any interest in the Property for three reasons. *First*, Plaintiff is not a party to the Sale

13   Agreement, so it could not have acquired any interest in the Property through that agreement.

14   *Second*, the Sale Agreement does not identify the purchase price for the Property, a material term,

15   so the Sale Agreement is invalid, as a matter of law. *Third*, the Sale Agreement is not a deed and

16   all real property conveyances must be by deed. Because Plaintiff lacks standing to assert these

17   claims, this Court does not have jurisdiction to adjudicate them.

          **a.**      **Plaintiff Is Not A Party To the Sale Agreement.**

18       Even if the Sale Agreement validly conveyed an interest in the Property (it does not, for

19   the reasons set forth below), it still would not vest Plaintiff with standing to pursue these claims

20   because Plaintiff is not a party to the Sale Agreement. *Fed. Nat'l Mortg. Assoc. v. Wages*, 2011

21   WL 5138724, *2 (W.D. Wash. Oct. 28, 2011) (plaintiff's "claims arising out of the loan contract

22   to which he was not even a party to fail as a matter of law"). The Sale Agreement identifies the

23   "Buyer" as IBB&A, the company that approached Mr. Sellars and Mr. Greene about entering into

24   the Sale Agreement. Greene Decl. ¶ 7. The Sale Agreement does not purport to transfer an interest

25   in the Property to Auxier Financial Group, LLC, and does even not mention that entity.

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

IBB&A was a for-profit corporation, organized in Washington in April 2009. Sullivan Decl. Ex. A. IBB&A has been inactive since August 2010. *Id.* Josh Auxier is identified as the "Vice President, Director" of IBB&A. Plaintiff, on the other hand, is an active Washington limited liability corporation that has been in existence since March 2007. *Id.* Ex. B. Josh Auxier is the only identified member of Plaintiff Auxier Financial Group, LLC. Both organizations existed in 2009 when Mr. Sellars, Mr. Greene, and IBB&A entered into the Sale Agreement and in 2010 when those same parties entered into the Amendment. But Plaintiff Auxier Financial Group, LLC, is not identified anywhere in either agreement. And the Sale Agreement explicitly states: "Buyer *may not assign this Agreement*, *or Buyer's rights hereunder, without Seller's prior written consent*." Greene Decl. Ex. C (emphasis added).  Plaintiff could therefore not acquire any interest in the Property through the Sale Agreement or Amendment.[4]

Plaintiff therefore lacks standing to pursue the claims at issue in this lawsuit. On this basis alone, the court should enter summary judgment for Defendants.

### b.     The Sale Agreement Fails Because It Does Not Identify the Purchase Price, An Essential Term.

Even if the Sale Agreement identified Plaintiff as the "Buyer," it still would not transfer any interest in the Property to Plaintiff because it does not identify the purchase price of the Property, a material term. *See Friedl v. Benson*, 25 Wn. App. 381, 389 (1980); *see also Lipton-U. City, LLC v. Shurgard Storage Centers, Inc.*, 454 F.3d 934, 938 (8th Cir. 2006) ("price is an essential and material term in a real estate contract"); *SS-II, LLC v. Bridge St. Assoc.*, 977 A.2d 189, 194 (Conn. 2009) ("essential provisions of a contract are the purchase price, the parties, and the subject matter"). "A writing is insufficient where it discloses that any of the material terms of the agreement are left open to be settled by future conferences between the parties; in such a case *there is no complete agreement*." *Friedl*, 25 Wn. App. at 389 (citation omitted) (emphasis added). In *Friedl*, Division One of the Washington Court of Appeals held an option contract was invalid

---

[4] Although the Amendment provides that IBB&A may "assign, lease, and/or resell the ***property*** prior to closing," it does not give IBB&A the right to assign its rights under the ***Sale Agreement***. Greene Decl. Ex. E (emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  where it failed to identify a purchase price for real property. *See id.* at 388-90. The Sale

2  Agreement fails for the same reason.

3       The Sale Agreement wholly fails to identify a purchase price; indeed, the line titled

4  "Purchase Price" is blank. Greene Decl. Ex. C. Plaintiff will likely argue that the purchase price is

5  payment in full of the Loan, as the "possession date" is "[u]pon satisfaction of underlying debt,"

6  and the Addendum to the Sale Agreement states that IBB&A "agrees to satisfy seller's existing

7  debt on subject property." *See id.* But it cannot be disputed that the Sale Agreement fails to

8  specifically identify a purchase price for the Property, which is a material and essential term. As

9  such, the Sale Agreement is not enforceable.

10                    **c.        The Sale Agreement Is Not A Deed.**

11      The Sale Agreement did not—and could not—vest Plaintiff with any ownership interest in

12 the Property because it is not a deed. "Every conveyance of real estate, or any interest there, and

13 every contract creating or evidencing any encumbrance upon real estate, ***shall be by deed***." RCW

14 64.04.010 (emphasis added). The Sale Agreement is not a deed for two reasons: It does not

15 sufficiently identify the Property and it does not convey any interest in the Property.

16      Every deed must identify the property being conveyed. The description of land in a deed

17 must be "sufficiently definite to locate it without recourse to oral testimony, or else it must

18 contain a reference to another instrument which does contain a sufficient description." *Bigelow v.*

19 *Mood*, 56 Wn.2d 340, 341 (1960) (citation omitted). A deed with an inadequate legal description

20 is void and is not subject to reformation or specific performance. *Howell v. Inland Empire Paper*

21 *Co.*, 28 Wn. App. 494, 495 (1981). The Sale Agreement states that a description of the property is

22 "Attached as Exhibit A," but no such exhibit is attached.

23      Plaintiff will likely argue that omitting Exhibit A was a mutual mistake that should be

24 corrected because the parties to the Sale Agreement agree that it refers to the Property. But a

25 similar situation arose in *Howell*, in which the deed identified the legal description of a full tract

26 of land, only a portion of which was conveyed. *See id.* at 495-96. The court rejected the argument

27 that the deed could be reformed by adding a more specific description of the property, even

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 10
DWT 18426359v2 0036234-000065

though there was no dispute as to the property being conveyed. *See id.* at 496. Here, because the Sale Agreement does not identify the property being conveyed, it is not a deed.

The Sale Agreement is also not a deed because it does not convey any interest in the Property to IBB&A (or any other entity). Plaintiff claims that it "acquired from co-owners Joseph T. Sellars and Greg Greene ***all of their rights***, ***title and interest*** in certain real property ***pursuant to that certain Real Estate Contract dated March 19, 2009***." Compl. ¶ 1.2 (emphasis added). In fact, neither Plaintiff nor IBB&A acquired an actual and existing interest in the Property via the Sale Agreement. Rather, it appears the Sale Agreement attempted to convey a future interest in the Property, which would vest when IBB&A paid off the Loan in full, but could occur no later than April 30, 2011. At best, then, the Sale Agreement is an agreement to agree, an agreement with open terms, or a contract to negotiate. *See Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 175-76 (2004) (identifying "three different but similar types of agreement"). As an initial matter, "[a]greements to agree are unenforceable in Washington." *Id.* at 176. Regardless of its characterization, the Sale Agreement did not convey any present interest to IBB&A, and it certainly did not convey any such interest to Plaintiff. Because the Sale Agreement did not convey any interest in the Property, it is not a deed.

**B.      At Best, The Sale Agreement Is An Unperformed Executory Contract.**

Even if the Court finds the Sale Agreement is a valid and enforceable executory contract, Plaintiff still would not have any interest in the Property because the condition precedent—payoff of the Loan in full—did not occur by the agreement's expiration date. *See* Sellars Decl. ¶ 15.

**1.      The Loan Has Not Been Paid Off, and the Sale Agreement Expired.**

Assuming for the sake of argument that Plaintiff was a party to the Sale Agreement (it is not) and that the Sale Agreement is a valid and enforceable executory contract (it is not), the Sale Agreement did not transfer any interest in the Property to Plaintiff (or any other entity) because the condition precedent was not satisfied—the Loan has not yet been paid in full.

As an initial matter, it is questionable whether the termination date of "April 31 [*sic*], 2011" is valid because neither Mr. Sellars nor Mr. Greene initialed the change in date. *See* Sellars

Decl. Ex. F; Greene Decl. Ex. E. Moreover, Mr. Sellars did not even execute the Amendment. Sellars Decl. ¶ 9. The hand-written date change appears to be initialed by someone with the initials "HRO" but not by Mr. Greene or Mr. Sellars. *See* Sellars Decl. Ex. F; Greene Decl. Ex. E. Thus, it is uncertain when the Sale Agreement's option terminated on March 31, 2010, or April 31, 2011. But this distinction is immaterial for the issues currently before the Court because IBB&A (and/or Plaintiff) failed to satisfy its obligation to pay off the Loan in full by either date.

If Plaintiff ever had the right to perform under the terms of the Sale Agreement, that right terminated on April 30, 2011. The Sale Agreement allowed twelve (12) months for IBB&A (or Plaintiff, according to its allegations) to "satisfy seller's existing debt." Greene Decl. Ex. C. The Amendment apparently extended that deadline one year, until April 30, 2011. *Id.* Ex. E. Plaintiff does not—and cannot—allege that either it or IBB&A paid off the Loan in full. Consequently, the Sale Agreement and Amendment terminated.

"[W]hen an agreement makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement becomes legally defunct upon the stated termination date if performance is not tendered." *Mid-Town Ltd. P'ship v. Preston*, 69 Wn. App. 227, 233 (1993). The Sale Agreement makes time of the essence in the last sentence of paragraph (l). Greene Decl. Ex. C at 4 ("Time is of the essence of this Agreement"). It also fixes a termination date of March 19, 2010, which may have been extended to April 30, 2011. Sellars Decl. Ex. F; Greene Decl. Ex. E. Assuming the termination date of the Sale Agreement was April 30, 2011, it expired six months ago without the Loan being paid in full. The Sale Agreement is thus legally defunct. Plaintiff may argue that it was unable to pay because Chase would not provide a reinstatement quote, but Chase had no duty to provide a quote, as explained below.[5]

> ### 2.   Under Washington's Deed of Trust Act, Chase Is Under No Duty to Accept Payment From Plaintiff To Cure Mr. Sellars's Default.

Plaintiff alleges it contacted Quality Loan and Chase "to obtain a reinstatement quote" for the Loan. Compl. ¶ 2.7. The Complaint suggests Plaintiff made this request ***after*** the Loan was in default. *See* Compl. ¶¶ 2.6-2.7 (Plaintiff requested reinstatement quote after issuance of Notice of

---

[5] Moreover, Mr. Sellars—the borrower—did not inform Chase about the Sale Agreement. Sellars Decl. ¶ 6.

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 12
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Trustee's Sale). But Chase was under no obligation to allow Plaintiff (a stranger to the Deed of Trust and Note) the opportunity to cure Mr. Sellars's default, and Chase's purported failure to respond to a reinstatement quote request from a stranger to the loan is therefore immaterial.

The Washington Deed of Trust Act identifies the entities who may cure a default in connection with a foreclosure, providing that "at any time prior to the eleventh day before the actual [trustee's] sale, the borrower, grantor, any guarantor, any beneficiary under a subordinate deed of trust, or any person having a subordinate lien or encumbrance of record on the trust property" may cure the default and stop the sale. RCW 61.24.090. Plaintiff does not allege it is the borrower, grantor, or guarantor of the Loan and none of these titles applies to it. Additionally, Plaintiff does not—and cannot—offer evidence that it is a beneficiary under a subordinate deed of trust, or that it has any encumbrance of record on the Property. Thus, Chase did not have a duty to allow Plaintiff to cure Mr. Sellars' default.  *See Schultz v. Werelius*, 60 Wn. App. 450 (1991).

In *Schultz*, the Washington Court of Appeals adjudicated an issue very similar to the one presently before the Court. In that case, the original purchaser of real estate, Werelius, assigned his interest to Snook, who was subsequently arrested for manufacturing methamphetamines on the property. *Id.* at 452. Werelius issued a notice of intent to forfeit the real estate contract to Snook and, three days later, Snook assigned his interest in the real estate contract to Schultz. *Id.*  Shultz subsequently filed suit to set aside the forfeiture, asserting that as Snook's assignee, he had standing to pursue Snook's claims. *Id.* The court disagreed, finding that, although contractual rights are freely assignable, "the right to commence an action to set aside a forfeiture is conferred by statute, not by contract." *Id.* at 453. Because the "Real Estate Contract Forfeiture Act (RCW 61.30) provides that actions to set aside a declaration of forfeiture may be commenced ***only*** by persons entitled to notice under [the statute]," Snook's assignee did not have standing to pursue Snook's claims. *Id.* at 452 (emphasis added).  Similarly, because ***only*** certain entities may cure a default under the Deed of Trust Act —and Plaintiff is not one of them—Plaintiff does not have standing to argue that Chase should have allowed it to cure Mr. Sellars's default. RCW 61.24.090. In fact, when a debtor in default attempted to transfer an interest in his property—and "all

1   potential causes of action…arising out of the [the] original loan"—on the "eve of foreclosure" via

2   a quitclaim deed, this Court found that act "spurious." *Wages*, 2011 WL 5138724, at *1, *2. As a

3   result, the Court lacks subject matter jurisdiction and should dismiss Plaintiff's claims.

4   **C.    Alternately, the Court Should Dismiss The Claims Because There Are No Genuine Issues of Material Fact**

5          If the Court finds Plaintiff has standing to pursue its claims, it should still dismiss

6   Plaintiff's Complaint because there are no genuine issues of material fact for trial. All of

7   Plaintiff's claims generally arise from its confusion surrounding Chase's recording of two

8   assignments and its belief that the Loan was not securitized. But neither the multiple assignment

9   recordings nor the securitization of the Loan would affect Plaintiff or give rise to the claims

10  alleged in the Complaint, given that Mr. Sellars was in default on his loan obligations in an

11  amount of $12,677.02. *See* Sullivan Decl. Ex. C (Notice of Trustee's Sale).  Plaintiff does not

12  deny the default, nor does Plaintiff offer evidence that it cured that default. Moreover, Plaintiff

13  admits that Chase "is currently servicing the [L]oan." Compl. ¶ 1.3. It also admits that: "If Bank

14  of America is the successor by merger to LaSalle Bank as trustee for Washington Mutual

15  Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust [(the "OA4 Trust")], then

16  Bank of America also is the successor by merger to LaSalle Bank as trustee for Washington

17  Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OC1 Trust [(the "OC1 Trust")]."

18  Compl. ¶ 1.5. Plaintiff thus admits that, regardless of any assignment, (a) Bank of America (or

19  any successor as Trustee of the Trust) owns the Loan and (b) Chase is the servicer of the Loan.

20         Should the Court find Plaintiff has standing to bring these claims, Chase and Bank of

21  America move for summary judgment of Plaintiff's claims for the following reasons:

22         *First*, Chase's recording of multiple assignments of the Deed of Trust did not affect

23  Plaintiff because recordation has no effect on the relationship between a lender and its borrower.

24         *Second*, Plaintiff cannot maintain a claim for wrongful foreclosure because no foreclosure

25  has occurred and there is no claim for wrongful initiation of foreclosure.

26         *Third*, Plaintiff's claim for slander of title fails because it does not allege that Defendants

27  maliciously made any false statement that affected Plaintiff's title or caused it pecuniary loss.

1     *Fourth*, Plaintiff fails to allege facts plausibly establishing essential CPA elements.

2     *Fifth*, Plaintiff does not offer any basis for an award of declaratory relief.

3     *Sixth*, Plaintiff offers no evidence supporting permanent or preliminary injunctive relief.

4     **1.     The Identity of the Trust That Owns the Loan Could Not Affect Plaintiff's Rights.**

5     As mentioned above, many of Plaintiff's claims arise from its confusion resulting from

6     Chase's recording of two assignments of the Deed of Trust—one purporting to transfer an interest

7     to the OA4 Trust and the other purporting to transfer an interest to the OC1 Trust. But Chase's

8     recording of multiple assignments does not give rise to any claim for two reasons. First, the

9     recording of assignments does not affect the relationship between a lender and its borrower. And

10    second, whether the Sellars Loan was securitized is immaterial to Plaintiff.

11    **a.     Recording Of Assignments Also Does Not Affect the Lender-Borrower Relationship or Plaintiff.**

12    Recording of an assignment of a deed of trust does not affect a borrower's rights. *See In re*

13    *United Home Loans,* 71 B.R. 885, 891 (W.D. Wash. 1987) ("assignment of a deed of trust and

14    note is valid between the parties whether or not the assignment is ever recorded"; "Recording of

15    the assignments is for the benefit of third parties"). The purpose of recording an assignment is to

16    put parties who subsequently purchase an interest in the property on notice of which entity owns a

17    debt secured by the property. RCW 65.08.070. The only way assignment of a deed of trust might

18    affect a borrower is if the borrower continues to make monthly mortgage payments to the

19    assigning lender. *See Ross v. Johnson*, 171 Wash. 658 (1933). Here, Plaintiff does not claim it

20    made payments to any lender other than Chase, so the recording of multiple assignments, while

21    possibly confusing, did not affect Plaintiff's rights. And Mr. Sellers, Chase's debtor, admits that

22    he started receiving default notices in early 2010, after IBB&A failed to make any payments on

23    the Loan. Sellers Decl. ¶ 10. Unless Plaintiff alleges it paid monthly mortgage payments to the

24    wrong trust or entity (and the right one is seeking those payments anew), the recording of multiple

25    assignments is immaterial and does not give rise to any claim.

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### b. Securitization of the Loan Does Not Affect Plaintiff.

Plaintiff alleges that it "has reason to believe" the Loan "has not been 'securitized.'" Compl. ¶ 2.9. Plaintiff appears to believe that this relieves it of its duty to pay monthly mortgage payments or somehow precludes the entity holding the Note from foreclosing. Plaintiff is mistaken. The Note evidencing the Sellars Loan is endorsed in blank and is in Chase's possession. Mirzoyan Decl. Ex. A. The Note is thus payable to its bearer (Chase), and the bearer of the Note (Chase) also may enforce its rights under the Deed of Trust because, in Washington, the Deed follows the Note. *See, e.g., Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 69 (1997); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) ("transfer of the note carries … the security"); *Leisure Time Sports v. Wolfe*, 194 B.R. 859, 861 (9th Cir. BAP 1996)("security … follows the debt"). Thus, regardless of the validity of any recorded assignment, the holder of the Note is the beneficiary of the Deed of Trust and, as such, entitled to foreclose. Plaintiff does not— and cannot, consistent with Rule 11—allege that Chase is not in possession of the Note.

In other words, even if all of Plaintiff's allegations about both assignments and the "true" owner of the Note are correct, because Chase holds the Note, which is endorsed in blank, Plaintiff's claims still fail. Regardless of any recorded assignment, the entity possessing the Note has the right to enforce it and the corresponding Deed of Trust. *See* RCW 62A.3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."). Indeed, the Ninth Circuit Bankruptcy Appellate Panel recently explained this point:

> Under established rules, the [borrower] ***should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note***. Or, to put this statement in the context of this case, the [borrower] should not care who actually owns the Note—***and it is thus irrelevant whether the Note has been fractionalized or securitized***—so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the "person entitled to enforce" the Note, the [borrower] should be content.

*Veal v. Am. Home Mortg. Serv., Inc.*, 450 B.R. 897, 912 (9th Cir. B.A.P. 2011). Thus, regardless of the effect of any assignments, the possessor of a note endorsed in blank is the owner and holder

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    entitled to enforce the note and its security instrument. *Id.* RCW 62A.3-301 ("'Person entitled to

2    enforce' an instrument means (i) the holder of the instrument …. A person may be a person

3    entitled to enforce the instrument even though the person is not the owner of the instrument or is

4    in wrongful possession of the instrument."). As a result, Plaintiff's claim that Chase lacks

5    authority to enforce the terms of the Note and Deed of Trust fails, as a matter of law.

2.    <strong>No Foreclosure Took Place and There is No Claim For Wrongful Foreclosure Initiation.</strong>

7    Plaintiff also appears to allege a cause of action for wrongful foreclosure. Compl. ¶¶ 3.3.1-

8    3.3.3. But Defendants have not foreclosed on the Property and no Washington court has ever

9    permitted a claim for a wrongful ***initiation*** of foreclosure. Indeed, every court to reach the issue

10   has rejected this argument: "There is no case law supporting a claim for damages for the *initiation*

11   of an allegedly wrongful foreclosure sale.  Moreover, there is no statutory basis supporting a

12   claim for damages for wrongful institution of foreclosure proceedings." *Pfau v. Wash. Mut. Inc.*,

13   2009 WL 484448, *12 (E.D. Wash. 2009) (citing *Kreinke v. Chase Home Fin.*, 2007 WL 2713737

14   (Wn. App. 2007)); *Henderson v. GMAC Mortgage*, 2008 WL 1733265, *5 (W.D. Wash. 2008)

15   ("illegal foreclosure" claim fails because "no foreclosure ever occurred"), *aff'd* 347 Fed. Appx.

16   299 (9th Cir. 2009) (plaintiffs could not recover on their illegal foreclosure claim absent

17   foreclosure; *Vawter v. Quality Loan Service*, 707 F. Supp. 2d 1115, 1123-24 (W.D. Wash. 2010);

18   *Bain v. OneWest Bank, F.S.B.*, 2011 WL 917385, at *6 n.4 (W.D. Wash. 2011) ("Because

19   Plaintiff's home has not been foreclosed, her claim is, in part, for the wrongful institution of a

20   nonjudicial foreclosure proceeding. The Deed of Trust Act does not authorize a cause of action

21   for damages for the wrongful institution of a nonjudicial foreclosure proceeding where no

22   trustee's sale has occurred."); *Mikhay v. Bank of Am., N.A.*, No. 2:10-cv-01464 RAJ, 2011 WL

23   167064, *3 (W.D. Wash.. Jan 12, 2011) (same); *Engel v. First Am. Title*, 2010 WL 3819372, *5

24   (W.D. Wash. 2010) (same); *Selkowitz v. Litton Loan Serv., LP*, 2010 WL 3733928, *2 (W.D.

25   Wash. 2010) (same).

26   Judge Robart, in an exhaustive opinion last year, noted that there is no DTA provision

27   "that permits a cause of action for wrongful institution of foreclosure proceedings" and that the

---

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 17
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

legislature "established a comprehensive scheme for the nonjudicial foreclosure process." *Vawter*, 707 F. Supp. 2d at 1123. Judge Robart explains that "[i]nterjecting a cause of action for damages for wrongful institution of nonjudicial foreclosure proceedings into the DTA's scheme would potentially upset the balance struck of the legislature," and that "to the extent the legislature intended to permit a cause of action for damages, it could have said so." *Id.* at 1123. Allowing "damages for wrongful institution of foreclosure proceedings would potentially undermine the legislature's goal that the nonjudicial foreclosure process remain efficient and inexpensive," as doing so "would ***spawn litigation under the DTA … thereby interfering with the efficient and inexpensive nature of the nonjudicial foreclosure process***." *Id.* (emphasis added). Finally, there is no cause of action "where the trustee's sale is discontinued." *Id.* Because no foreclosure took place, Plaintiff's wrongful foreclosure claim fails, as a matter of law.

### 3. Plaintiff Does Not Offer Evidence Supporting Any of the Elements of a Claim for Slander of Title.

Plaintiff also asserts Defendants slandered title to the Property by recording a Notice of Trustee's Sale. But Defendants' failure to properly appoint Quality Loan as successor trustee (before it recorded the notice) cannot give rise to a slander of title claim. Slander of title requires: (1) a false statement; (2) made with malice; (3) about a pending property sale or purchase; (4) that defeats plaintiff's title; and (5) causes Plaintiff's pecuniary loss. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375 (1980). There is no malice if "the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity." *Id.*

Plaintiff does not identify ***any*** false statement made by Defendants. In fact, the Notice of Trustee's Sale that serves as the basis for Plaintiff's claim was drafted and filed by Quality Loan (which is no longer a party to this action). Although Plaintiff alleges that Defendants "caus[ed] Quality Loan Service to record an unlawful Notice of Trustee's Sale," Plaintiff does not allege that Defendants made any false statement. In fact, Chase attempted to appoint Quality Loan successor trustee but it recorded the Appointment of Successor Trustee in Pierce County, instead of Snohomish County. *See* Sullivan Decl. Ex. D (recorded in Pierce County on August 2, 2010). Plaintiff therefore cannot allege Defendants acted maliciously. Moreover, recording of a Notice of

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 18
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Trustee's Sale has no effect on the status of Plaintiff's title and it certainly did not defeat Plaintiff's title. Finally, Plaintiff fails to allege any pecuniary loss as a result of the recording of the Notice of Trustee's Sale. Because Plaintiff does not—and cannot—offer evidence supporting any of the elements of its slander of title claim, the Court should dismiss it.

**4.      Plaintiff's CPA Claim Fails Because He Cannot Show an Unfair or Deceptive Act, a Public-Interest Impact, or Causation.**

Plaintiff's CPA claim appears to be a veiled claim for wrongful foreclosure, as the bases for this claim are: (1) Chase failed to provide Plaintiff with a reinstatement quote; and (2) Defendants engaged in a "wrongful and unlawful foreclosure." Compl. ¶ 3.3.2. For the reasons stated above, a "wrongful foreclosure" cannot serve as the basis for Plaintiff's CPA claim. Thus, the only basis for the CPA claim is that Chase did not provide a reinstatement quote.

The elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the plaintiff's business or property; and (5) that injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Plaintiff can only offer evidence to support one of the required elements—that Defendants' acts occurred in trade or commerce. Because Plaintiff cannot offer evidence supporting four required elements of its CPA claim, the Court should dismiss those claims.

**a.      Plaintiff Does Not Identify An Unfair or Deceptive Act.**

"[W]hether the [alleged] conduct constitutes an unfair or deceptive act can be decided by this court as a question of law." *Indoor Billboard Wash., Inc. v. Integra Telecom of Wash.*, 162 Wn.2d 59, 74 (2007). Plaintiff can meet the first CPA element in ***only*** two ways: establishing either that an act or practice (i) "has a capacity to deceive a substantial portion of the public," or (ii) that "the alleged act constitutes a per se unfair trade practice." *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 344 (1989) (quoting *Hangman*). Plaintiff must therefore allege facts showing that Defendants' acts have the capacity to deceive a substantial portion of the public or cite to a per se unfair trade practice as set out by the Legislature. Plaintiff cannot do either.

The only way to establish CPA unfairness is by pointing to a statute identifying

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  Defendants' conduct as a per se unfair trade practice. *Id.*; *Minnick v. Clearwire US LLC*, 683

2  F.Supp.2d 1179, 1186 (W.D. Wash. 2010) ("*Hangman Ridge* … requires the Legislature to make

3  determinations of unfairness"). Plaintiff cannot do so. Thus, Plaintiff does not allege facts

4  identifying any "unfair" act under the CPA.

5        Plaintiff likewise cannot offer evidence establishing any deceptive practice by Defendants.

6  To be "deceptive," the act or practice must be one that "misleads or misrepresents something of

7  material importance." *Nguyen v. Doak Homes, Inc.*, 140 Wn. App. 726, 167 P.3d 1162, 1166

8  (2007). Plaintiff does not allege that Defendants misled it about any material fact and thus cannot

9  show deception. Plaintiff alleges only that Chase did not provide it with a reinstatement quote.

10  Compl. ¶ 2.7. But Chase was under no duty to provide Plaintiff with a reinstatement quote. *See*

11  *supra* section III(B)(2). Especially given that Chase's borrower, Mr. Sellars, did not inform it

12  about the Sale Agreement. Sellars Decl. ¶ 6. Plaintiff does *not* allege that Chase misrepresented

13  that it would provide a reinstatement quote or that it promised one thing and did another.

14        Moreover, even if Plaintiff did allege deceptive acts toward it, it must also allege facts

15  showing Defendants' conduct had the capacity to deceive a substantial portion of the public. It

16  does not, and the allegations in the Complaint establish it cannot. Plaintiff complains only about

17  how it was treated by Chase with respect to its request for a reinstatement quote. Chase's

18  treatment of Plaintiff did not—and could not—affect any other member of the public. On this

19  basis alone, the Court should dismiss Plaintiffs' CPA claim. *See Brown v. Brown*, 157 Wn. App.

20  803, 815-17 (2010) (one-off loan transaction does not satisfy capacity to deceive standard);

21  *Henery v. Robinson*, 67 Wn. App. 277, 291 (1992) (isolated statement, although misleading,

22  lacked capacity to deceive a substantial portion of the public).

23        **b.**    **Plaintiff Does Not Identify An Impact on the Public Interest.**

24        A plaintiff asserting a CPA claim must also show that the act complained of impacts the

25  public interest. The factors to be considered when evaluating this element depend upon the

26  context in which the alleged act was committed.  *Hangman Ridge*, 105 Wn.2d at 780 (1986).

27  Because Plaintiff complains of a consumer transaction, the following factors are relevant:

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 20
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*McKenna v. Commonwealth United Mortg.*, 2008 WL 4379582, *5 (W.D. Wash. 2008).  In

*McKenna*, the court dismissed a CPA claim, finding the plaintiffs failed to:

identify any facts from which a reasonable jury could conclude that additional plaintiffs have been or will be injured in the same fashion; that the alleged conduct was part of a pattern or was repeated prior to the conduct alleged in this matter; that there is potential for similar conduct in the future; [or] that many consumers were affected, or will likely be affected, by the conduct.

*Id.* Here, Plaintiff's CPA claim fails for identical reasons. Not only does Plaintiff fail to establish any public interest impact, but its Complaint establishes the unlikelihood of any repetition. Plaintiff's allegations deal exclusively with its request for reinstatement quote and Chase's refusal to provide one. Plaintiff does not—and again, cannot—allege any pattern or practice of Defendants that is likely to be repeated in the future.  As a result, Plaintiff cannot offer evidence supporting the public interest element of its CPA claim.

### c.  Plaintiff Does Not Identify Any Injury Or Any Causal Link Between Defendants Acts and Injury.

Plaintiff's CPA claim also fails because it does not allege any injury to its business or property. Plaintiff claims only that it unsuccessfully tried to procure a reinstatement quote. Plaintiff does not allege how Chase's failure to timely provide a reinstatement quote harmed it. Moreover, no foreclosure occurred and the threat of foreclosure did not harm Plaintiff.

To prevail on this claim, Plaintiff must offer evidence of a causal link between an alleged misrepresentation or deceptive practice and its purported injury.  *Indoor Billboard*, 162 Wn.2d at 81-82. Plaintiff must also offer evidence that but for Defendants' allegedly unfair or deceptive practice, it would not have been harmed.[6] *Id.* Because Plaintiff wholly fails to identify causation (and does not even allege injury), the Court should dismiss Plaintiff's CPA claim.

### 5.  There Is No Basis For An Award of Declaratory Relief.

Plaintiff also seeks declaratory relief ordering Defendants to "provide strict proof of their claim and standing to enforce the original note and deed of trust." Compl. at 21:13-22:3. But, as

---

[6] Here, Plaintiff cannot even establish that it has an interest in the Property.

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 21
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   mentioned above, the Note is endorsed in blank and, as a result, the only "proof" Defendants need

2   to offer is possession of the Note. *See supra* section III(C)(1)(b). The Washington legislature has

3   already set forth a statutory scheme identifying the proof a party seeking to enforce a negotiable

4   instrument must provide. RCW 62A.3-205(b). There is simply no basis for declaratory relief.

5   **6.      The Court Should Dismiss Plaintiff's Request For Injunctive Relief
         Because There Is No Valid Basis For This Relief.**

6           Finally, the Complaint asks the Court to permanently enjoin Defendants from engaging in

7   some unknown act; although the Complaint is not clear, it appears Plaintiff seeks to enjoin

8   Defendants from ever enforcing their rights under the Note and Deed of Trust. Compl. ¶ 3.5.2-

9   3.5.4. But, again, Plaintiff does not possess evidence supporting the required elements to enjoin

10  any act of Defendant, either permanently or preliminarily, so the Court should dismiss this claim.

11          **a.      Plaintiff Is Not Entitled to A Permanent Injunction.**

12          Injunctive relief is a "transcendent or extraordinary remedy,…which should not be lightly

13  indulged in, but should be used sparingly and only in a clear and plain case." *Kucera v.*

14  *Washington Dep't of Trans.,* 140 Wn.2d 200, 209 (2000). The Washington Supreme Court has

15  repeatedly held that in order to obtain any type of injunctive relief, the party seeking relief must

16  establish: (1) a clear legal or equitable right; (2) a well-grounded fear of immediate invasion of

17  that right by the one against whom the injunction is sought; and (3) the acts complained of are

18  either resulting in or will result in actual and substantial injury to him. *See Wash. Fed'n of State*

19  *Emp. v. State*, 99 Wn.2d 878, 888(1983). "[T]he failure to establish any one or more of the criteria

20  dictates that the requested relief be denied." *Wash. Fed'n*, 99 Wn.2d at 888.

21          Plaintiff fails to identify any "clear legal or equitable right" that would justify an award of

22  injunctive relief. The Washington Supreme Court has "emphasized the necessity of establishing a

23  clear legal or equitable right and held that an injunction '***will not issue in a doubtful case***.'" *Id.* at

24  888 (emphasis added).  To determine if a clear legal and equitable right exists, the Court analyzes

25  whether Plaintiff will prevail on its suit. *Id.* Here, Plaintiff does not identify the basis for its

26  request, but it appears the request for injunctive relief is wholly based on its belief that Defendants

27

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 22
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

do not have the right to foreclose. Plaintiff has no evidence to support that theory and thus fails to identify a clear legal or equitable right sufficient to enjoin a trustee's sale on the Property.

Plaintiff also cannot have a well-grounded fear of immediate invasion of any right because there is no trustee's sale currently scheduled on the Property. Quality Loan recorded a Notice of Trustee's Sale on August 13, 2010, which noted a sale date of November 19, 2010. Sullivan Decl. Ex. C. That sale has since been cancelled. And, in any event, the sale could only have been continued by Quality Loan for one hundred twenty (120) days. RCW 61.24.040. It is therefore impossible that a trustee's sale would still be pending. Because  Plaintiff cannot identify any clear legal or equitable right and, even if it did, it does not have a well-grounded fear of immediate invasion of that right, the Court should dismiss Plaintiff's request for injunctive relief.

> **b.**      **Plaintiff Is Also Not Entitled to Preliminary Injunctive Relief.**

Plaintiff's Complaint seeks to permanently enjoin a trustee's sale and should be treated as a request for a preliminary injunction. *Kotok v. Homecomings Fin., LLC*, 2009 WL 1652151, *2 (W.D. Wash. 2009).  To obtain a preliminary injunction, Plaintiff must demonstrate either: "(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions have been raised and the balance of hardships tips in [Plaintiff's] favor." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citation omitted).  "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (citation omitted).  In other words, under each formulation, at least some degree of both irreparable harm and a likelihood of success on the merits must exist to warrant entry of an injunction. Plaintiff cannot establish either irreparable injury or probability of success on the merits.

> **(1)**      **Plaintiffs Cannot Establish Irreparable Injury.**

A party seeking injunctive relief must "show the possibility of irreparable injury if preliminary relief is not granted." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1177 (9th Cir. 2006). Plaintiff does not alleged that any irreparable injury will occur if its request is denied. The Property is an investment property and not a party's residence. But even if it was,

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 23
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  "[m]erely suggesting what is universally accepted as true–that a loss of a home would be

2  irreparable–is legally unacceptable in the context of a preliminary injunction." *Kotok*, 2009 WL

3  1652151 at *3. Because Plaintiff does not offer evidence of any irreparable injury, the Court

4  should reject Plaintiff's claim for injunctive relief.

5                    **(2)      Plaintiff Has Not Alleged Facts Suggesting a Likelihood
                              of Success on the Merits.**

6          Plaintiff's request for injunctive relief is wholly derivative of the claims described above,

7  which Defendants have addressed at length. Because it is unlikely that Plaintiff could prevail on

8  the merits of any of its claims (for the reasons set forth above), injunctive relief is not appropriate.

9                              **IV.     CONCLUSION**

10         Plaintiff lacks standing to bring claims against Defendants because Plaintiff does not have

11  *any* ownership or possessory interest in the Property. The Sale Agreement is invalid because it

12  does not identify a purchase price for the Property, but, even if it were valid, it does not identify

13  Plaintiff as a party to that agreement. In any event, at best, the Sale Agreement was an executory

14  contract that expired after IBB&A failed to pay off the Loan in full by April 30, 2011. Finally,

15  even if Plaintiff had standing, it has no evidence supporting the essential elements of its claims.

16  Plaintiff's claims thus fail and the Court should enter summary judgment in favor of Defendants.

17

18         DATED this 8th day of December, 2011.

19                                        Davis Wright Tremaine LLP
                                          Attorneys for Chase and Bank of America
20

21                                        By  */s/ Matthew Sullivan*
                                              Fred B. Burnside, WSBA #32491
22                                            Matthew Sullivan, WSBA #40873
                                              E-mail: fredburnside@dwt.com
23                                            E-mail: matthewsullivan@dwt.com

24

25

26

27

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 24
DWT 18426359v2 0036234-000065

                                                        Davis Wright Tremaine LLP
                                                             LAW OFFICES
                                                     Suite 2200  ·  1201 Third Avenue
                                                     Seattle, Washington  98101-3045
                                                     (206) 622-3150  ·  Fax: (206) 757-7700

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on December 8, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Edward L. Mueller
  elm@muellerlawfirm.net

DATED this 8th day of December, 2011.

Davis Wright Tremaine LLP
Attorneys for Defendants
Chase and Bank of America

By    *s/ Matthew Sullivan*
Matthew Sullivan, WSBA #40873
Suite 2200, 1201 Third Avenue
Seattle, Washington  98101-3045
Tel.: (206) 757-8257; Fax: (206) 757-7257
E-mail: matthewsullivan@dwt.com

CHASE'S MOTION FOR SUMMARY JUDGMENT (C 10-2070 MJP) — 25
DWT 18426359v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700