1

2

3

4

5

6

7

8

9

10

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11  AUXIER FINANCIAL GROUP LLC,

12              Plaintiff,

13      v.

14  JP MORGAN CHASE BANK, N.A.; Bank of
15  America N.A. as Successor by Merger to
    LASALLE BANK N.A. as TRUSTEE for
16  Washington Mutual Mortgage Pass-through
    Certificates WaMu Series 2007-OA4 Trust, and
17  for Washington Mutual Mortgage Pass-Through
    Certificates MWALT Series 2007 OC-1 Trust,
18

19              Defendants.

No. C10-2070 MJP

DECLARATION OF KARINA
MIRZOYAN IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT

20

21      I, Karina Mirzoyan, declare and state as follows:

22      1.  *Identity of Declarant.* I am a Senior Research Specialist at JPMorgan Chase

Bank, N.A. ("Chase"). In my position, I work on issues that require familiarity with, and access

23  to, original loan file documents in Chase's possession. I have personal knowledge of, or have

24  confirmed through my review of business records, the facts stated in this Declaration and they

25  are and correct. If called as a witness, I would be competent to testify to these matters.

26

27

MIRZOYAN DECLARATION  (C10-2070 MJP) - 1
DWT 18512517v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    2.    **Promissory Note.**  Attached as Exhibit A is a true and correct copy of the

2  original Promissory Note signed by Joseph Sellars. The Note has been kept in Chase's secure

3  vault in Monroe, Louisiana, until I arranged for its delivery to our counsel, at the attention of

4  Fred Burnside, via Federal Express on October 28, 2011.  Chase physically acquired the Note,

5  endorsed in blank, when it acquired the assets of Washington Mutual Bank from the FDIC,

6  acting as receiver, in September 2008.

7

8         I declare under penalty of perjury, under the laws of the State of Washington that the

9  foregoing is true and correct to the best of my knowledge and belief.

10

        DATED this 7th day of December, 2011, at Chatsworth, California

11

12                                       Karina Mirzoyan

13                                       Karina Mirzoyan

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MIRZOYAN DECLARATION  (C10-2070 MJP) - 2
DWT 18512517v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 - 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150   Fax: (206) 757-7700

1

## <u>CERTIFICATE OF SERVICE</u>

2

3         I hereby certify that on December 8, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4    following:

5    • **Edward L. Mueller**
        elm@mueller

6

7         DATED at Seattle, Washington this 8th day of December, 2011.

8

9

                                    By  _/s/ Matthew Sullivan_____

10                                      Matthew Sullivan, WSBA #40873

11                                      1201 Third Avenue, Suite 2200

                                        Seattle, Washington  98101-3045

12                                      Telephone: (206) 757-8257

                                        Fax: (206) 757-7257

13                                      E-mail: matthewsullivan@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MIRZOYAN DECLARATION  (C10-2070 MJP) - 3
DWT 18512517v2 0036234-000065

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

 1174

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __115%__ OF THE ORIGINAL AMOUNT (OR $_____342,700.00__). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

_FEBRUARY 22, 2007_____   ___EVERETT_____, ___WASHINGTON_____
                                    CITY                          STATE

_2525 CENTER RD, EVERETT, WA   98204_____
                          PROPERTY ADDRESS

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ _____298,000.00_____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA_____. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2.  INTEREST
Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __8.883 %. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __2.250__ %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.
I will make my monthly payments on __1ST__ day of each month beginning on _APRIL, 2007_____, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __MARCH 01, 2037_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148_____
_____, or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $___1,139.09___, unless adjusted at an earlier time under Section 4(H) of this Note.

1174

### (C) Payment Changes

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the ___1ST___ day of ___APRIL, 2007_____, and on that day every month thereafter. Each such day is called a "Change Date".

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___THREE AND 90/100_____ percentage points ___3.900___% ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ___ELEVEN AND 30/100_____ percentage points ___11.300___% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing ___APRIL 01, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

1174

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___115%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___115%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

1174

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __FIFTEEN__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

1174

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

1174

WITNESS THE HAND (S) AND SEAL (S) OF THE UNDERSIGNED.

_____        _____
JOSEPH T SELLARS


_____        _____


_____        _____


_____        _____


Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By _____
CYNTHIA RILEY
VICE PRESIDENT