The Honorable Marsha J. Pechman

Edward L. Mueller, WSBA # 264
Mueller & Associates, Inc. P.S.
2050 112th Avenue, N.E., Suite 110
Bellevue, WA 98004
Tel. # (425) 457 7600
Fax # (425) 457 7601
e-mail: elm@muellerlawfirm.net
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| AUXIER FINANCIAL GROUP LLC, et. al<br><br>Plaintiff,<br><br>vs.<br><br>JP MORGAN CHASE BANK, N.A.; Bank of America N.A. as Successor by Merger to LASALLE BANK N.A. as TRUSTEE for Washington Mutual Mortgage Pass-through Certificates WaMu Series 2007- OA4 Trust, and as TRUSTEE for Washington Mutual Mortgage Pass-Through Certificates MWALT Series 2007 OC1 Trust.<br><br>Defendants, | No. 2:10-cv-02070 MJP.<br><br>Declaration of Josh Auxier in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment<br><br>Noted for December 30, 2011 |

I, Josh Auxier, declare and state the following:

I am the managing member of Plaintiff Auxier Financial Group, LLC, and am authorized to make this declaration on behalf of Auxier Financial Group, LLC. I have first-hand personal knowledge of all facts and statements made in this Declaration. If called as a witness I would be competent to testify to these matters. I make this Declaration in Support of Plaintiff's Response and Opposition to Defendants' Motion for Summary Judgment.

Dec. of Mr. Auxier                     ~ 1 ~

## I. Evidence Disputed as to Defendant Chase Bank's claim that it is Holder/Owner of the Promissory Note referenced in the Subject Deed of Trust

1.1.   As of the time of the making of this declaration Plaintiff has received 4 different copies of the Note from the Defendants that is reputed by the Defendants to be part of the purported loan documentation of the loan by Washington Mutual Bank, FA to Joseph Sellars; and thus those four different copies of the Note are now a part of the evidence of who is the owner or holder of the promissory note secured by the deed of trust that is the central subject matter of this lawsuit.  The first version of the Note was provided to Plaintiff on October 15th, 2009 by and from Washington Mutual Home Loans ("WaMu Home Loan") in response to Plaintiff's request for a copy of the original note.  At the time of the request time the Plaintiff (Auxier Financial Group LLC d/b/a International Business Brokers & Associates) had previously cured the prior default of the loan when Plaintiff had acquired the ownership rights in the two real property parcels from Mr. Joseph Sellars and Mr. Greg Greene and their entity known Land Barons LLC d/b/a/ LB Enterprises.   That request had been made by Auxier Financial Group LLC because at that time it expected  to become responsible for payment on the loan as purchaser of the property that was encumbered by the deed of trust pursuant to the agreement with the sellers; therefore, the  buyer needed to know the provisions and terms of the Note.  A copy of that first version of the Note is attached hereto marked as **Exhibit A-1** and incorporated herein by reference as if fully set forth here.  I personally received this document by fax from the sender, Washington Mutual Home Loans.  See page 1 of **Exhibit A-1**.  That first version of the note has the following characteristics which can be observed on the face of the document:

(1) the Note is not indorsed in any manner by anyone at the time this copy was sent to me;

Dec. of Mr. Auxier                              ~ 2 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

1    (2) the Note contains a barcode stamp at the top of page 1 of the Note, beneath which is

2        printing that reads "PNOTE" at the time this copy was made and sent to me;

3    (3) the Note has a handwritten notation at the top of Page 1 that appears to read

4        "S. Sellars" at the time this copy was made and sent to me;

5    (4) the Note has no redactions at the time this copy was made and sent to me;  and

6    (5) the Note has no other notations or highlights.   Excerpts of this version of the Note are

7    as follows:

8    Page 1 – Showing that version # 1 of the note was sent from Washington Mutual to Josh
     Auxier at Plaintiff's Fax # on October 15, 2009:

9

10

11   

12

13

14   Page 2 – contains a handwritten notation that appears to read "S. Sellars":

15

16   

17

18

19

20

21

22

23

24

Dec. of Mr. Auxier                    ~ 3 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1   The signature block with no indorsement, no other notation and no highlights.

2
3
4
5
6
7
8



9   **1.2.**   The 2nd, 3rd, & 4th versions of the Note were received on a CD from Defendants' legal

10   counsel that was part of Defendants' Response to Plaintiff's Requests for Production to

11   Defendants.  I personally reviewed that entire CD, and made copies of the 2nd, 3rd, and 4th

12   versions of the note from the CD.

13

14   **1.3.**   The 2nd version of the note came on the CD from Defendants' counsel with a

15   document name and number that reads "AUXIER000487." A copy of this Note is attached

16   hereto, marked **Exhibit A-2**, and incorporated herein by reference as if fully set forth here.

17   This copy of the Note was (1) not endorsed in blank; (2) contains a barcode stamp at the top of

18   page 1 with printing below that reads "PNOTE";  (3) has a handwritten notation that appears

19   to read "S. Sellars";  (4) has a partial redaction of the Loan #;  and (4) has no other notations or

20   highlights.    Excerpts of this 2nd version of the Note are as follows:

21
22
23
24

Dec. of Mr. Auxier                              ~ 4 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

Page 1 – Barcode "PNOTE"; Partial Redaction; Handwritten "S.Sellars" notation:



The signature block with the partial redaction of the loan #, no indorsement, no addition notation, and no highlights.   (Notice how clean and dark the copy and letters are.)

**1.4.**    The 3rd version of the note came on the same CD referred to above, with a file name

and number of "AUXIER0001542" This copy is (1) purportedly indorsed in blank and the

alleged indorsement appears very clear and dark;  (2) This copy of the Note does <u>not</u> have a

barcode stamp on page 1;   (3) This copy of the Note has no handwritten notation on page 1

that reads "S. Sellars";  (4) This copy of the Note has a complete Redaction of the Loan #; (5)

Dec. of Mr. Auxier                       ~ 5 ~

1  has a notation that reads Exhibit A; and (6) contains an easily identifiable alteration of the

2  printed last name of the signer in the signature block.

3

4  **1.5.**    Excerpts of this 3rd version of the Note are as follows:

5  Top of Pg. 1 – Showing no bar code, no handwritten notation of "S. Sellars"  and complete
   redaction of loan #.

6

7

8                                         ADJUSTABLE RATE NOTE
                                        (12-MTA Index - Payment and Rate Caps)

9          THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
           AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS
           WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER
           THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN    115%    OF

10         THE ORIGINAL AMOUNT (OR $      342,700.00  ). MY INTEREST RATE CAN NEVER
           EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON
           PAYMENT MAY BE DUE AT MATURITY.

11          FEBRUARY 22, 2007        EVERETT            , WASHINGTON
                                                 CITY                STATE

            2525 CENTER RD, EVERETT, WA  98204
12                                          PROPERTY ADDRESS

12  Bottom of Pg 1 – Showing notation added of "Exhibit A"

13
                                                        EXHIBIT A
14      CONFIDENTIAL                                    AUXIER001542

15

16

17

18

19

20

21

22

23

24

Dec. of Mr. Auxier                  ~ 6 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

The signature block with dark stamp of indorsement and no highlights.



Notice the lowercase typeset of the letter "s" in Sellars on this 3rd version of the Note produced in discovery

1.6.    The 4th version of the Note came on a CD with a file name of "AUXIER0001724" This copy of the Note is (1) purportedly indorsed in blank although different than in Ver. 3 because this version of the indorsement is quite faded;  (2) This copy  does not have a barcode stamp, handwritten notation of "S. Sellars," or Exhibit A notation on page 1; (3) has a varied degree of redaction of the Loan #;  and (4) has uniquely different typeset than in Version 3 of the allegedly indorsed copy of the Note.

Dec. of Mr. Auxier                  ~ 7 ~

Top of Pg. 1 – Showing NO barcode or handwritten notation and varied degree of redaction of loan #.



Bottom of Page 1.

**CONFIDENTIAL**                                                      AUXIER001724

The signature block with faded stamp of indorsement and no highlights.



Notice the UPPER case typeset of the letter "S" in Sellars on this 4th version of the Note produced in discovery



Dec. of Mr. Auxier                          ~ 8 ~

1

2

Here are the two signature lines of the allegedly indorsed copies of the Note.

3

| Here is the Ver. 3 Signature Line. | Here is the Ver. 4 Signature Line. |
|---|---|
|  JOSEPH T SELLARS |  JOSEPH T SELLARS |

4

5

6

7

8

9

10

11

It is easy to see from the above information that there has been an alteration made to the typewritten last name of Mr. Sellars under the signature line of version 3 of the Note.  That is also the first version of a copy of the Note on which a reputed indorsement of any kind appeared.

12

**1.7.**    The Declaration of Karina Mirzoyan has now added an additional version of the Note, calling it a copy of the original note with what Ms. Mirzoyan apparently declares under oath is an original indorsement in blank without recourse.  This copy was not produced during discovery although we do not know why.   Plaintiff's request for production to JP MORGAN CHASE BANK, N.A. as servicer specifically requested production of any copies of the original note indorsed pursuant to the requirements of each of pooling and servicing agreements of the two trusts, -- i.e., with respect to the Washington Mutual Mortgage Pass-through Certificates WaMu Series 2007- OA4 Trust, and with respect to the Washington Mutual Mortgage Pass-Through Certificates MWALT Series 2007 OC1 Trust.  No such documents were produced, although the three versions identified earlier as Exhibits A-2. A-3.and A-4 were produced.

13

14

15

16

17

18

19

20

21

22

23

24

Dec. of Mr. Auxier                              ~ **9** ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1   1.8.   However, a careful inspection of the exhibit attached to the Declaration of Karina

2   Mirzoyan shows a faded (not an original?) indorsement on that reputed "original" note.   A

3   true original indorsement on an original note would normally be clear, well defined, and very

4   legible.  The indorsement on the note attached to the Declaration of Karina Mirzoyan does not

5   appear to be an original.  It looks like a faded copy in which the name of the "signer" is

6   difficult to read.  In any event, according to the Declaration of Karina Mirzoyan the reputed

7   "original" note was never delivered to either of the trusts or a custodian for either trust.  With

8   all due respect, the last place the original note probably should have been was continually in

9   the possession of JP Morgan Chase Bank as a belated servicer, who was not involved as a

10  servicer when either trust was established.

11  1.9.   This pattern of multiple versions of the copy of the Note  clearly shows that there are

12  multiple versions of copies of the Note in question that have been created by someone in

13  possession of a copy of the note after I, Josh Auxier, as Plaintiff's managing member,

14  requested and received a copy of version 1 of the Note by fax from Washington Mutual Home

15  Loans on October 15, 2009.   How many copies of the Note have been created in total while

16  in the possession and control of Defendants is impossible to know, although there are more

17  than 4 parties who have claimed interests in the Sellers' Loan.  The parties are:  (1)

18  Washington Mutual Bank, F.A.; (2) Washington Mutual Mortgage Securities Corp. ( a

19  necessary conduit through whom the pool of loans must pass to ultimately be deposited by

20  another entity, namely, (3) WaMu Asset Acceptance Corporation, the only qualified depositor

21  into either the ....OC1 Trust or the .... OA4 Trust; (4) LASALLE BANK N.A. as TRUSTEE

22  (prior to the merger with B of A) for Washington Mutual Mortgage Pass-through Certificates

23

24

Dec. of Mr. Auxier                          ~ 10 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

1    WaMu Series 2007- OC1 Trust; and (5) Bank of America, N.A., as Successor by Merger to

2    LASALLE BANK N.A. as TRUSTEE for Washington Mutual Mortgage Pass-through

3    Certificates WaMu Series 2007- OA4 Trust. The existence of multiple copies of the Note

4    does help to explain how and why there have been multiple parties making claims as reputed

5    Owner of or Holder of the note, and Beneficiary of the deed of trust that secures payment of

6    the note regarding the Sellars Loan. Defendants have presented nothing to show when the

7    purported indorsement was added to the copy of the Note or by whom. There has also been no

8    credible evidence presented by Defendants to attest to the validity of the reputed indorsement

9    or to show that these later differing copies which have been "indorsed in blank" are not just

10   copies cleverly created electronically upon request when needed for foreclosure or litigation

11   purposes.

12   **1.20.**    On behalf of Plaintiff, I state that based on the information available to me, the only

13   credible <u>unaltered</u> copy of the promissory note dated February 22, 2007, signed by Joseph

14   Sellars that has been submitted as evidence is **Exhibit A-1.** Based on that document and the

15   date I received it on October 15, 2009, it does not appear that the unaltered original note has

16   been indorsed. Plaintiff disputes that any of the above described 4 differing copies of the

17   Note are valid or adequate to provide evidence adequate to deprive Plaintiff of its interests in

18   the subject real property relying upon the now discharged obligation which was originally

19   owed by Mr. Sellars to Washington Mutual Bank, FA. According to RCW 62A. 3-309 (b):

20

21       *"The court may not enter judgment in favor of the person seeking enforcement unless it*
         *finds that the person required to pay the instrument is adequately protected against loss*
22       *that might occur by reason of a claim by another person to enforce the instrument"*

23

24

Dec. of Mr. Auxier                 ~ 11 ~

1    In this instant case there have already been multiple parties who have made claims and

2    collection attempts against the *"person required to pay the instrument"* (Mr. Sellars, who has

3    been relieved of his obligation by the discharge of his Ch. 7 Bankruptcy) through both

4    Washington Mutual Home Loans and now Defendant Chase Bank, as the alleged Servicers of

5    the subject note and also through Northwest Trustee Services Inc. and Quality Loan Services

6    Corporation as the different alleged Successor Trustees of the DoT on behalf of different

7    reputed beneficiaries.   Subsequently due to the agreements between Mr. Sellars, Mr. Greene,

8    and Plaintiff upon Plaintiff's acquisition of its rights in the subject property and adjacent

9    parcel these multiple parties, such as, Defendant BofA… as Trustee of …OC1 Trust and

10   BofA… as Trustee …OA4 Trust and Defendant BofA's predecessor Lasalle Bank, by way of

11   parties who claim to be their agents, Defendant Chase Bank and Northwest Trustee Services

12   Inc. an agent of Defendant Chase Bank have also collected monies from Plaintiff. There is no

13   way to know just how many additional parties may bring claims in the future as the total

14   number of duplicated or altered versions of the Note is impossible to ascertain.

15                              **II. PLAINTIFF'S CLAIMS.**

16   **2.1   Plaintiff's Acquisition of the Subject Property and adjacent Parcel.**

17        **2.1.1**   On or about March 9 or 10, 2009, as I recall, I was asked by two persons whom

18   I knew, namely Heidi Velez-Brown and Bill Bolyard, if I, Josh Auxier, as the managing

19   member of Auxier Financial Group, LLC, would be interested in acquiring some real property

20   in the Everett area near Paine Field for redevelopment as a self-storage facility.  Auxier

21   Financial Group, LLC, had been an existing entity since early 2007, through which I had done

22   business investing in real property, and recently had been studying the economic feasibility of

23

24

Dec. of Mr. Auxier                    ~ 12 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1    development of real property as self-storage facilities.  This sounded like a reasonable business

2    opportunity.    Ms Velez-Brown and Mr. Bolyard told me that the property was composed of

3    two parcels, one of which was unencumbered, and the other of which was encumbered by a

4    loan that was in default and nearing a non-judicial foreclosure sale , and that that the right to

5    reinstate the loan on the encumbered parcel would expire about March 19, 2009.   I also was

6    told that neither parcel separately was large enough for redevelopment as a self-storage

7    facility; that the two properties would be and should be sold together, that they were separate

8    but interrelated transactions.   We discussed the urgency of the timing, and that they had been

9    in contact with one of the owners named Joseph Sellars, and that the other co-owner was

10   named Greg Greene.  I was told that both were experienced and knowledgeable persons in real

11   estate matters; and that Greg Greene was a licensed real estate broker. Therefore, insofar as I

12   understood, the sellers were knowledgeable and could be expected to read and understand any

13   documents.

14        **2.1.2**   I agreed with Ms Heidi Velez-Brown and Mr. Bill Bolyard that I would register

15   the name "International Business Brokers & Affiliates" (sometimes recited as an acronym –

16   IBB&A) as a "doing business as" name of Auxier Financial Group, LLC.[1]   I did that

17   registration on March 10, 2009.  A copy of the receipt for that registration is attached hereto,

18   marked as **Exhibit B-1**, and incorporated herein by reference as if fully set forth here.  On

19

20   _____

21   [1] I also agreed with Ms. Velez-Brown and Mr. Bolyard to later form a new corporation to be
     named International Business Brokers  & Affiliates, Inc.  The main activity and purpose of that
     corporation was to pursue some development of apartments in King County. The ventures

22   were unsuccessful, and the corporation has gone out of business.  There was discussion of the
     possibility that if the development permits on property purchased from Mr. Sellars and Mr.

23   Greene in Snohomish County could be brought to the point where "entitlements" for the
     developer had been obtained, then the corporation might consider buying the project.

24

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601)

1   March 21, 2009 I signed a HUD-1 Closing Statement on behalf of "Auxier Financial Group,

2   LLC d/b/a IBB&A" (using the Acronym) in which the sellers for the respective parcels of real

3   property were listed as "Land Barons LLC d/b/a LB Enterprises, and Joe Sellars and Greg

4   Greene, Owners." A copy of that HUD-1 Closing Statement is attached hereto, marked

5   **Exhibit B-2**, and incorporated herein by reference as if fully set forth here.   Based on my

6   knowledge of escrow closings of real property sales, I reasonably believe that "Land Barons

7   LLC d/b/a LB Enterprises, and Joe Sellars and Greg Greene, Owners," signed a HUD-1

8   closing statement on behalf of the sellers for the same transactions covered by the HUD-1

9   Closing Statements.   In addition, I authorized and paid $17,020.71 for the full reinstatement of

10  the Joseph Sellars Loan # ….1174, payable in a cashier's check issued out of escrow to

11  Northwest Trustee Services.  A copy of that payment and a receipt for it is attached hereto,

12  marked **Exhibit B-3,** and incorporated herein by reference  as if fully set forth here.   I also

13  authorized the payment of and paid the sales price for the adjacent vacant parcel of land that

14  was part of the two interrelated transactions, and in return received the Statutory Warranty

15  Deed (SWD) signed by the sellers on March 22, 2009, who were Land Barons LLC d/b/a LB

16  Enterprises, signed by Joseph T. Sellars and Greg Greene, which SWD was recorded under

17  Snohomish County Recording No. 200903230350.  That statutory warranty deed expressly

18  conveys and warrants title to "Auxier Financial Group LLC d/b/a International Business

19  Brokers & Affiliates."   Thus by the closing pursuant to the HUD-1 Statement, and the signing

20  of the statutory warranty deed the sellers  were advised in writing exactly who the buyer was,

21  and the effect of the deed.  If they failed for some reason to understand that, it made no

22  difference in the rights that were conveyed in the statutory warranty deed or later evidenced in

23  the later Memorandum of Contract which Mr. Sellars and Mr. Green signed on April 14, 2009.

24

Dec. of Mr. Auxier                                  ~ 14 ~

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

1   A copy of that Memorandum of Contract is attached hereto, marked **Exhibit B-4**, and

2   incorporated herein by reference as if fully set forth here.  The first sheet of **Exhibit B-4** is the

3   face recording sheet for use by the Snohomish County Recorder's Office.  The actual

4   Memorandum of Contract appears as pages 2 and 3 of **Exhibit B-4.**

5

6       **2.1.3.**   The downturn in the economy, coupled with problems related to questions as

7   to who held owned or held the note, and who was the true beneficiary caused me to the

8   approach the sellers, Joe Sellars and Greg Greene, with respect to the need to renegotiate some

9   of the terms of the agreement, related to the encumbered property at 2525 Center Road in

10  Everett, WA 98204.  The document that was signed was attached as Exhibit E to the

11  Declaration of Greg Greene.  There were 8 items agreed upon.  That document in turn refers in

12  part to the prior purchase and sale agreement which was attached to the Declaration of Greg

13  Greene as Exhibit C, to the extent that any provision of that Purchase and Sale Agreement

14  related to 2525 Center Road, Everett, WA 98204 was intended to survive the original closing

15  date of March 27, 2009.  For example, the original closing date is stated on page 1 of Exhibit

16  C, item 12.  That date had come and gone and the $17,020.71 to reinstate the Sellars Loan had

17  been paid.  However, Item 6 on page one of purchase and sale agreement, i.e., the purchase

18  price for the property at 2525 Center Rd, Everett WA 98024 had been left open because at the

19  time no one knew whether the lender would cooperate with a reinstatement or not.  It was now

20  agreed in this Amendment, as item 1 that the purchase price would be determined based on the

21  result of any final discount off of the loan amount and/or any workout of the encumbrances or

22  liens on the property.  In addition, items 2, 3, 5, and 8 are related to buyer agreeing to cover

23  expenses of a short sale, modification, discount, or other workout deemed appropriate to the

24

Dec. of Mr. Auxier                              ~ 15 ~

1    buyer to obtain a reconveyence adequate for seller to convey title to the buyer. The other most

2    significant provision was item # 4, which expressly provided that "Item # 3 on Form 34 of

3    Purchase and Sale Agreement is hereby deleted."  Form 34 is a standardized

4    "Addendum/Amendment to Purchase and Sale Agreement;" and its Item # 3 read "Buyer

5    agrees to remain current on existing loan until completely satisfied."  In short, what that Item

6    # 4 did was relieve the Buyer from Item # 3 in Form 34, in exchange for the buyer agreeing to

7    pick up and pay expenses pursuant to items 2, 3, 5, and 8 of the Amendment to Purchase and

8    Sale Agreement. In addition, Auxier Financial Group LLC d/b/a IBB&A agreed to actually

9    engage the services of a third party to assist with facilitation of a workout. That brings my

10    discussion to the next subject – engagement of someone to help facilitate a workout.

11

    **2.2  Plaintiff's engagement of Lawful Forensic Foreclosures**

12

13        **2.2.1**   On March 12th, 2010 I, acting on behalf of Plaintiff, engaged the services of

14    Lawful Forensic Foreclosures a workout and Negotiation Company by initiating a $1,200

15    interbank transfer. This is shown on the excerpt from Plaintiff's bank statement from March of

16    2010 below:

17

| 3/12 | Transfer to DDA # | 1,200.00 | |

18

19    I, Josh Auxier, hereby attest that the above excerpt is from Plaintiff's business bank account

20    statement for the time period from March 1, 2010 to March 31, 2010 and that the transaction

21    shown above was initiated by Plaintiff's Managing Member, Josh Auxier, to engage the

22    services of Lawful Forensic Foreclosures.

23

24

Dec. of Mr. Auxier          ~ **16** ~

1

2

3

**2.3  Plaintiff's Payments made to Washington Mutual Home Loans and Defendant Chase Bank**

4      **2.3.1**   I on behalf of Plaintiff doing business as IBB&A personally phoned several

5  times after the acquisition of Plaintiff's rights in the subject property both Washington Mutual

6  Home Mortgage and Chase Bank and made monthly payments towards the Sellars Loan

7  totaling in excess of $14,000.

8

**2.4  Plaintiff's Improvements to the Property**

9

10      **2.4.1**   I on behalf of Plaintiff doing business as IBB&A made arrangements to

11  improve the property by upgrading the heating, replacing the appliances (twice), obtaining

12  updated approvals from Snohomish County for the planned improvements, planning the

13  upgraded electrical, maintaining the property since Plaintiff's acquisition, managing the

14  tenants in the property since Plaintiff's acquisition.

15  **2.5  Plaintiff's time, and effort put forth to further the planned development of the property**

16

17      **2.5.1**   I on behalf of Plaintiff doing business as IBB&A developed a pro-forma,

18  business plan, and retained 3rd parties to assist with the planned development of the property

19  into a Mini-Storage facility. The time associated with this work was in excess of 500 working

20  hours prior to the filing of the action.

21  **2.6  Plaintiff's dba International Business Broker & Affiliates.**

22      **2.6.1**   At the time of the negotiations and execution of the purchase agreements for the

23  main and adjacent parcel (subject property) the only International Business Brokers &

24

Dec. of Mr. Auxier                                    ~ 17 ~

1   Affiliates in existence in WA state was the DBA established by me, personally, via the

2   Washington State Department of Licensing Website on March 10, 2009.

3   **2.7   Status of Purchase Agreement and Deed of Main Parcel**

4

5   **2.7.1**   The Purchase Agreements between Plaintiff, Mr. Sellars, and Mr. Greene have

6   been satisfied.   Plaintiff has paid to Mr. Sellars and Mr. Greene all amounts owing to them

7   including the $31,000 defined on the Purchase Price line of the Adjacent Parcel Purchase

8   Agreement (1 of the 2 Purchase Agreements that constitute the Combined and Amended

9   Purchase Agreements), plus the reinstatement of the Sellars loan, plus the engagement of a

10  third party to assist with a workout of the Sellars loan. Mr. Sellars and Mr. Greene have never

11  claimed any additional monies are owed to them, nor have they pursued any action against

12  Plaintiff disputing Plaintiff's rights or interest in the subject property. Mr. Sellars and Mr.

13  Greene owe a Deed to Plaintiff as all terms to the agreements have been satisfied. Both Mr.

14  Sellars and Mr. Greene have refused to provide it until the Deed of Trust that is subject of the

15  lawsuit is reconveyed or otherwise quieted.  As Plaintiff is already involved in this existing

16  suit and as Mr. Sellars & Mr. Greene are not bringing any action against Plaintiff nor are they

17  currently interfering with Plaintiff's possession of the property, Plaintiff has not brought any

18  action against Mr. Sellars or Mr. Greene, although it appears that may be necessary in the

19  future.

20  **2.8   Plaintiff and Escrow made NWTS and Chase aware that the curing of the 1st**
    **foreclosure was part of an acquisition of the property by a 3rd party, the Plaintiff.**

21

22  Washington Mutual Home Loans (Chase's alleged predecessor) and Northwest Trustee

23  Services Inc. were informed by both myself and 1st Choice Escrow, represented by Cherie

24

Dec. of Mr. Auxier                              ~ 18 ~

1    Goldsmith, at and around the time of the curing of the first foreclosure that the funds used

2    were part of a 3rd party transaction where Plaintiff was acquiring an interest in the property.

3    When further researching the matters on the evening of Dec. 12th, 2011 @ 6:21pm I again

4    contacted, Cherie Goldsmith to verify this fact. Cherie confirmed directly to me that during the

5    closing of the transaction it was not only normal business practices but her duty as an escrow

6    agent to fully disclose to all parties the circumstances surrounding the payment of the funds. In

7    addition, Plaintiff was also identified as a Purchaser of the subject property on more than one

8    occasion when I called Washington Mutual Home Loans seeking to make the monthly payments,

9    verify WaMu/Chase's receipt of the authorization, and obtain a copy of the Note. This occurred

10    more than once between the months of April thru October 2009. These calls started with my initial

11    contact with Washington Mutual Home Loans  when I faxed to the Washington Mutual Home

12    Loans the authorization for release of information about the Sellars loan, executed by Mr.

13    Sellars. This authorization was received, accepted, and noted on the account by Washington

14    Mutual Home Loans on April 30th, 2009 as shown on the screen shot of the MSP LOAN

15    MASTER MAINT. & DISPLAY produced in a document identified as AUXIER000368 by

16    Defendants in response to Plaintiff's Request for Production:

17

18

19

20

21

1  mortgage servicers is an extremely time-consuming and tedious task, as the representatives very

2  rarely note the account with the occurrence or content of a call, and fail to follow through on

3  anything they commit to doing. This explains the 7 months duration between my first call in April

4  '09 and my receipt of a copy of the Original Note in October '09. During several of the calls the

5  representatives' response to my request was that they did not have a copy of the note to send me.

6  **2.9   Payments made to Defendant Chase and its Predecessor Washington Mutual Home**
7  **Loans.**

    After Plaintiff acquired its interest in the subject property and adjacent parcel I personally

8  phoned both Washington Mutual Home Loans and Defendant Chase, on behalf of Plaintiff, during

9  these calls I authorized both above entities to initiate Electronic Funds Transfer payments from

10 Plaintiff business checking account. Sometimes these calls were via a live representative when I

11 would also follow-up on the authorization I had faxed as commonly it had been misplaced, not

12 received, and then after the representative would take the time to review the notes they would find

13 it. I also followed up on my ongoing request for a copy of the Sellars' Note, a few of these call

14 were also via an automated system.

15

16                                                  /s/ Josh Auxier
17                                                  17837 1st Ave S #169
                                                    Normandy Park, WA 98148

18                                                  206-551-1786

19

20

21

22

23

24

Dec. of Mr. Auxier                          ~ 20 ~

**MUELLER & ASSOCIATES, INC., P.S.**
ATTORNEYS AT LAW
2050 – 112th Avenue N.E. Suite 110
Bellevue, Washington 98004
Ph. (425) 457-7600; FAX (425) 457-7601

1

2                                    **CERTIFICATE OF SERVICE.**

3            I hereby certify that on December 28, 2011, at prior to 3:00 am, after having difficulties

4     with my computer system,  I caused a copy of the foregoing document to be electronically

5     filed with the Clerk of the Court using the CM/ECF system which will send e-mail notification

6     of such filing to the following participants:

7

8            Legal counsel for Defendants JP Morgan Chase Bank N.A.
               and Bank of America, N.A.:
9                   Fred B. Burnside, WSBA # 32491
                    Matthew Sullivan WSBA # 40873
                    of Davis Wright Tremaine LLP
10                  1201 Third Avenue, Suite 2200
                    Seattle, WA 98101-3045
11                  Tel. # (206) 622-3150
                    Fax: (206) 757-7700
12                  e-mail: fredburnside@dwt.com
                    e-mail: matthewsullivan@dwt.com
13

14

15    Dated December 28, 2011.

16                                           _/s/_ Edward L. Mueller_____
                                             Edward L. Mueller, WSBA # 264
17

18

19

20

21

22

23

24
                                                    MUELLER & ASSOCIATES, INC., P.S.
      Dec. of Mr. Auxier              ~ 21 ~                 ATTORNEYS AT LAW
                                                    2050 – 112th Avenue N.E. Suite 110
                                                        Bellevue, Washington 98004
                                                    Ph. (425) 457-7600; FAX (425) 457-7601)