The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT,**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

8

9

10

AUXIER FINANCIAL GROUP LLC,

                                        Plaintiff,

11

                        vs.

12

QUALITY LOAN SERVICE CORP. of
WASHINGTON; JP MORGAN CHASE
BANK, N.A.; BANK OF AMERICA N.A.
as Successor by Merger to LaSalle Bank
NA as TRUSTEE for Washington Mutual
Mortgage Pass-through Certificates WaMu
Series 2007- OA4 Trust, and as TRUSTEE
for Washington Mutual Mortgage Pass-
Through Certificates MWALT Series 2007
OC1 Trust.

                                        Defendants.

13

14

15

16

17

No. 2:10-cv-02070 MJP.

Plaintiff's Response to Defendants' Motion
for Summary Judgment

Originally
Noted for December 30, 2011

Filed as a Document Subject to
Plaintiff's Motion to Accept Late Filing
Noted for Friday, February 3, 2012

18

19

        Plaintiff Auxier Financial Group, LLC, by and through Edward L. Mueller, its legal

20

counsel of record, responds to and opposes Defendants' Motion for Summary Judgment by JP

21

Morgan Chase Bank, N.A. & Bank of America N.A. as Successor by Merger to LaSalle Bank

22

NA as Trustee for Washington Mutual Mortgage Pass-through Certificates WaMu Series

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 1-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1    2007- OA4 Trust, and as Trustee for Washington Mutual Mortgage Pass-Through Certificates

2    MWALT Series 2007 OC1 Trust.

3                                  I. **INTRODUCTION**

4    **1.1    Procedural Posture and Pleadings  Prior to Defendants' Motion To Dismiss.**

5           The pleadings and posture of the parties in this case are unusual.  Plaintiff filed its

6    Complaint on December 24, 2010, claiming (1) Violation of the Washington Deed of Trust

7    Act RCW 61.24 *et seq.*, (2) Slander of Title, (3) Wrongful and Unlawful Foreclosure as an

8    Unfair Business Practice. In violation of RCW 19.86., (4) Declaratory Judgment re: Lack of

9    Standing to Foreclose, and (5). Temporary Restraining Order, Preliminary and Permanent

10   Injunction.  Plaintiff served its summons and complaint on Defendant Quality Loan Service

11   Corp. of Washington.(hereinafter QLS)  in early January 2011.  The purpose for serving

12   process initially on QSL was to stop the pending non-judicial foreclosure, that had triggered

13   the need for the lawsuit. Without that pending foreclosure Plaintiff would not have started this

14   lawsuit. After QSL was served process it continued the sale into March 2011.  Thus, no

15   application for TRO was necessary to delay the foreclosure sale.

16          Defendants JPMorgan Chase Bank, N.A. and Bank of America N.A. as Successor by

17   Merger to LaSalle Bank NA  as Trustee for . . .  OA4 Trust, and as Trustee for  . . .  OC1 Trust,

18   <u>appeared through current legal counsel</u> on January 4, 2011, even though those defendants had

19   not yet been served with process. Those Defendants were subsequently served with process in

20   February, 2011.

21          Defendant Quality Loan Service Corp. of Washington appeared through other separate

22   legal counsel on January 7, 2011.   At that time QLS had recorded a Notice of Trustee's Sale

---

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 2-

1   with respect to the property at 2525 Center Rd , Everett WA 98204, which is one of the

2   subjects of this lawsuit.,  See Decl. of Edward L. Mueller, etc. pp.6 & 7, ¶¶ 8 & 9, and Ex.

3   EM-5. The problems with that foreclosure from Plaintiff's perspective were stated in

4   Plaintiff's Complaint, p. 3, lines 17-21 & pp. 9 & 10, ¶ 2.8, as explained below.

5        After the lawsuit was commenced, Quality Loan Service's legal counsel contacted

6   Plaintiff's counsel by e-mail on February 3, 2011 challenging the allegations in the complaint

7   that the non-judicial foreclosure was commenced in violation of the specific requirement of

8   RCW 61.24.010(2) that an appointment of successor trustee must be recorded in the county

9   where the property to be foreclosed upon is located before a successor trustee may commence

10  a non-judicial foreclosure proceeding, as pleaded in the Complaint (Dkt # 1) at p. 10, lines 2-

11  12 inclusive.  See Declaration of Edward L. Mueller, etc. (Dkt # 33) p. 8, line 19 through p. 9

12  line 7, and Exhibit EM-6 for the facts that support that allegation.  **Ex. Em-6** is an

13  Appointment of Successor Trustee <u>recorded in Pierce County under Pierce County Recording</u>

14  <u>No.</u> 201008020398, appointing Quality Loan Service as successor trustee with respect to the

15  Deed of Trust that encumbers 2525 Center Rd, in Everett WA 98204 in Snohomish County on

16  which Quality Loan Service had recorded The Notice of Trustee's Sale it recorded under

17  Snohomish County Recording No. 201008130651.

18       The same or a similar Appointment of Successor Trustee document had not then and

19  still has not been recorded in Snohomish County insofar as Plaintiff or its legal counsel knows.

20  See Declaration of Edward L. Mueller, etc. (Dkt # 33) p.7, lines 4 –18 incl.

21       Nevertheless, Quality Loan Service did not terminate its Notice of Trustee's Sale

22  recorded under Snohomish County Auditor's Recording No. 201008130651 referred to in the

    Complaint, p. 3, lines 17-21 & pp. 9 & 10, ¶ 2.8,  even though QLS and its legal counsel knew

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 3-

1   by February 7, 2011, that no document had been recorded in Snohomish County that appointed

2   Quality Loan Service as successor trustee of the Deed of Trust recorded under Snohomish

3   County Auditor's No. 200702270788, which deed of trust Quality Loan Servicing claimed in

4   its recorded Notice of Trustee's Sale gave it the power of sale.  Thus QLS had no power of

5   sale. See RCW 61.24.010(2).

6       In the Initial Joint Status Report (Dkt# 10) the position of Defendant Quality Loan

7   Service was stated with its counsel's approval, as follows:

8       "C.  Current Position of Defendant Quality Loan Service.
    Defendant Quality Loan Service intends to defend against each of the claims of
9   Plaintiff against this defendant, and agree that the case is not unusually complex."

10

11      Regardless of its official stated position, Quality Loan Service did not hold any non-

    judicial foreclosure of the Deed of Trust described in its Notice of Trustee's Sale, and the

12  maximum time limit for continuing  a non-judicial foreclosure under the Notice of Trustee's

13  Sale recorded under Snohomish County Auditor's Recording No. 201008130651 with the time

14  limit required  by RCW 61.24.040(f)(6)[1] has expired,[2] although Plaintiff continues to be

15  concerned about the possibility of a new non-judicial foreclosure in the name of the purported

16  beneficiary Bank of America N.A. as Successor by Merger to LaSalle Bank NA  as Trustee for

17

18

19  [1]  That code subsection in relevant part reads:
        (6) The trustee has no obligation to, but may, for any cause the trustee deems advantageous,
20      continue the sale for a period or periods not exceeding a total of one hundred twenty days . . . .

21  [2]  See *Albice v. Premier  Mortgage Services of Washington, Inc. ,et al.* 157 Wash. App. 912,
        239 P.3d 1148 (2010); review accepted 170 Wn.2d 1029 (2011). at 239 P.3d 1155, 1156,
        where the Court of Appeals, Div. 2, held the non-judicial foreclosure sale void for violation
22      of the code subsection quoted in f.n.1 above.  That opinion relied in part on *Bingham v.
        Lechner,* 111 Wash. App 118, 131, 45 P.3d 562 (2002). Id. 1156.

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 4-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1   the . . . OA4 Trust. No other foreclosure by any defendant has been commenced during the

2   pendency of this lawsuit. There is no foreclosure, non-judicial or judicial, now pending.

3          When it became obvious that the foreclosure sale had been dropped by QLS, and

4   would not be restarted by QLS, that meant that Plaintiff probably had no claim for damages

5   against Defendant QLS.   Plaintiff voluntarily dismissed Defendant QLS, for that reason and

6   for  other reasons related to diversity jurisdiction.  Furthermore the erroneous filing in Pierce

7   County had been made by or on behalf of JP Morgan Chase Bank or Bank of America as

8   Successor by merger to LaSalle Bank NA as Trustee for the . . . OA4 Trust.  Thus the claim of

9   violation of RCW 61.24.010(2) still appeared viable against the remaining defendants.

10          To be specific, prior to Defendants' Motion for Summary Judgment none of the

11   remaining Defendants asserted any specific right to foreclose in any pleading or other notice;

12   but Plaintiff was aware that Bank of America as Successor by merger to LaSalle Bank NA as

13   (1) Trustee for the . . . OA4 Trust or as (2) Trustee for the . . . OC1 Trust, could start a new

14   non-judicial foreclosure based on the respective recorded assignments.

15          As of the date of filing of Defendants' Motion for Summary Judgment (Dkt # 22), no

16   Defendant has answered the Complaint, nor filed any pleading documents in the Court file, nor

17   requesting any affirmative claim of any kind against Plaintiff, such as a right to foreclose.

18   Defendants' Motion For Summary Judgment (Dkt # 22) simply asks for dismissal of Plaintiff's

19   claims based on:

20     (1) Lack of standing to assert a claim; and

21     (2) Lack of evidence to support the elements of Plaintiff's claims or the relief requested

22          Plaintiff will address those subjects in that order in the parts of  Plaintiff's Response

     entitled III. – Plaintiff's Statement of Relevant Facts, and IV. -  ARGUMENT.

Plaintiff's Response to Defendants'
Motion for Summary Judgment            - Page 5-

**MUELLER & ASSOCIATES, INC., P.S.**
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

## II.  PLAINTIFF'S STATEMENT OF THE RELEVANT FACTS.

The Plaintiff's statement of relevant facts are mostly contained in (1) the Declaration of Josh Auxier, etc., filed January 25, 2012 as an attachment to the Praecipe for Substitution of Document to Correct Errata (Second Errata Correction) (Dkt No. 37;  37-1; 37-2;and 37-3.) This replaces the earlier filing that became Dkt # 32 with attachments, which in turn replaced an earlier filing that became Dkt # 31.   In summary, the Decl. of Josh Auxier states his personal knowledge of the history of the acquisition of the rights to ownership and possession of both interrelated parcels that are part of the subjects of this law suit.  See Decl. of Josh Auxier," (Dkt # 37-1)  p. 12, line22 though p. 19, line 16, ¶ 2.1, and sub-¶¶ 2.1.1, 2.1.2, & 2.1.3.  He specifically states his personal knowledge of three different documents the sellers (Mr. Sellars and Mr. Greene) signed between March 21, 2009, and April 14, 2009 that shows the full name of the buyer in the two interrelated transactions – namely, Auxier Financial Group LLC dba International Business Brokers & Associates.  Each of the documents was short (one to two pages) and easy to read.

Each of the three documents described above clearly and plainly stated that Mr. Sellars and Mr. Greene were selling both interrelated properties to Auxier Financial Group LLC dba International Business Brokers & Associates (IBB&A).  Both sellers were knowledgeable real estate investors at the time the transactions closed on March 27, 2009 as provided in the respective purchase and sale agreements; and Mr. Greene was and is a real estate broker.  In short, the Declarations of Mr. Sellars and Mr. Greene are inconsistent with the documents they signed, two of which were recorded, showing to whom they were selling and agreeing to sell the interrelated parcels of property.  Those facts and documents alone create questions of fact

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 6-

1    that cannot be resolved by a Motion For Summary Judgment.

2         Mr. Auxier's Declaration (Dkt # 37-1) beginning at p. 2, line 1 through p.12, line

3    line20, ¶¶ 1.1 through 1.20 incl., state his personal knowledge of the five different versions of

4    the note that he has seen, when he first saw each version, and the fact that he had asked for a

5    copy of the original note in 2009 from Washington Mutual Bank, and understood that the copy

6    of the note sent to him was a copy of the original note as it existed at that time.it was sent to

7    him. He relied on that version of the note to make the payments of $14,850.84 to Washington

8    Mutual Bank and later to JPMorgan Chase Bank after it claimed to be successor to WaMu

9    bank. See Decl. of Josh Auxier, ¶¶ 2.3,  2.8,  2.9, & 3.0.

10        But the real problem, as the Decl. of Josh Auxier points out at page 2. Line 1, through

11   p. 12, line 20, is that the five multiple versions of the note that Defendant's have produced,

12   should be viewed as part of the fact pattern that JPMorgan Chase Bank authorized and made

13   two successive assignments for value received of "all beneficial interest" in the same note and

14   deed of trust to two different investment trusts more than a year apart,  The first assignment

15   was signed on November 3, 2008 in Dakota County MN, and recorded on November 19, 2008

16   under Snohomish County Recording No, 200811190037,  That Assignment was reputedly

17   made by JPMorgan Chase Bank of all of its beneficial Interest in both the note and the deed of

18   trust to LaSalle Bank NA, as Trustee for the . . . OC1 Trust. JPMorgan Chase Bank has

19   admitted that the person who signed that Assignment had authority to do so. (Whether that

20   admission was made to avoid discussion of identity of the signer and the legal impact of that

21   assignment, given the legal questions raised in the complaint and in the argument below is a

22   separate question.)  That assignment was made before Bank of America had merged with

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1    LaSalle Bank and claimed to be its successor.  LaSalle Bank as Trustee for the . . . OC1 Trust,

2    was the reputed beneficiary for which the foreclosure was in progress when Plaintiff paid

3    $17,020,71 to reinstate the Sellars loan so that Auxier Financial could make a binding

4    agreement by which to  acquire the property.  That assignment to LaSalle Bank as Trustee for

5    the . . . OC1 Trust of the Sellars Loan was the only assignment recorded at the time Auxier

6    Financial made its payments and closed on the two interrelated transactions on March 27,

7    2009.  Auxier Financial had a right to rely on the status of recorded documents at that time to

8    show who the creditor was.  Auxier Financial became a bona fide purchaser of the vendee's

9    interest and rights to the two interrelated properties, subject to the terms of that recorded

10    document.  Even if Defendants have produced conflicting evidence,(and Plaintiff claims

11    Defendants have not) such evidence creates disputed issues of fact.

12        When  JPMorgan Chase Bank made the second assignment of the same note and deed

13    of trust dated May 6, 2010, recorded on May 18, 2010, under Snohomish County Recording

14    No. 201005180285, JPMorgan Chase owned and possessed no interest of record in the Sellars

15    Loan according to the earlier assignment, because Chase had not received back from LaSalle

16    Bank, NA, or any other representative of said Trustee for  the . . .  OC1 Trust the beneficial

17    interest and note reported to have been transferred under the earlier Assignment recorded

18    under Snohomish County recording No, 200811190037 by  JPMorgan Chase Bank.

19    Nevertheless, QLS proceeded to base its Notice of Trustee's Sale dated August 11, 2010, and

20    recorded under Snohomish County Recording No. 201008130651 on that second assignment.

     See Ex. Em-5, attached to and incorporated into the Decl. of Edward L. Mueller at p. 6, ¶ 8.

21

22

Plaintiff's Response to Defendants'
Motion for Summary Judgment     - Page 8-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

That evidence creates issues of fact, as well as issues of law as to whether or not any of the Defendants have standing to foreclose on the deed of trust even if Defendant Chase bank "holds" the properly indorsed note, because plaintiff's evidence indicates that the deed of trust was transferred twice for value received while JPMorgan Chase intentionally, at the same time withheld delivery of the note to the reputed assignee beneficiaries with respect to each respective assignment. Therefore, based on those facts Plaintiff believes the Note is now unsecured because of the intentional acts of JPMorgan Chase Bank.

## III. ARGUMENT.

### 3.1.   Legal Standard & Authorities Re Summary Judgment.

In order to determine if Defendants Motion for Summary Judgment is appropriate the court must take into consideration several factors as defined by the US Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 US 242 (1986). In *Anderson* the Supreme Court made several statements defining when summary judgment is appropriate. *"This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."* The court went on to further define a "genuine issue" *as* "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." The Court also ruled "In considering a motion for **summary judgment**, the 'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor'."

A motion for summary judgment is only appropriate *"... when there is no genuine issue of material fact **and the moving party is entitled to judgment** as a matter of law."*

Defendants' Motion For Summary Judgment is not appropriate in this case because

Plaintiff's Response to Defendants'
Motion for Summary Judgment           - Page 9-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320-130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

there are several genuine issues of material facts in dispute that are appropriate for trial, as shown in Part II. **Plaintiff's Statement of the Relevant Facts,** above.  Defendants motion should be denied in the instant case because  (1) there are geniune issues of material fact in dispute that are appropriate for trial and;  (2) Defendants are not entitled to judgement as a matter of law given the disputed facts and possible inferences therefrom.

    **3.2.**    **Defendants' claim that Plaintiff does not own and has no interest in the Subject Property and therefore has no standing to bring the claims raised in Plaintiffs complaint.  The statement is untrue based on recorded documents; and at worst it presents a disputed question of Fact.**

There are several genuine issues of material fact in dispute between Plaintiff and Defendants here.  Defendants claim that the purchase contract and amendment are between *"between three other parties.*[3] On the contrary, the Recorded Memorandum of Contract[4] executed by both Mr. Greene & Mr. Sellars plainly states that the agreement is between: *"Joseph Sellars & Gregory Greene (…as Seller) and Auxier Financial Group LLC. dba International Business Brokers and Affiliates (…as Buyer)."*[5] The Memorandum also provides the parcel numbers for both parcels acquired by Plaintiff Parcel # 00538000016202 (The Subject Property herein) and Parcel # 00538000016201 (The adjacent Vacant Parcel.) The adjacent vacant parcel of property was fully transferred at the time of closing by Warranty Deed[6] to Plaintiff and reads *"The GRANTOR **Land Barons, LLC…dba LB***

---

[3]See Motion For Summary Judgment (Dkt # 22) Pg. 1 Line 8.

[4]A certified copy of the recorded Memorandum of Contract is attached hereto, marked **Exhibit Q,** and incorporated by reference as if fully set forth here.  A copy of this document is also attached as Exhibit D to the Declaration of Greg Greene (Dkt # 25).

[5]See Exhibit Q. Pg. 1 ¶ 1

[6]A certified copy of the adjacent parcel Warranty Deed is attached hereto, marked **Exhibit R,** and incorporated by referenced as if fully set forth here. A copy of this deed also is attached as Exhibit

Plaintiff's Response to Defendants'
Motion for Summary Judgment    - Page 10-

Enterprises…convey and warrants to **Auxier Financial Group LLC, dba International Business Brokers and Affiliates…**" This Warranty Deed was executed by both Mr. Sellars & Mr. Greene and notarized by Cherie Goldsmith the escrow closing agent for the transaction. The transaction was also identified as being between Auxier Financial Group, LLC d/b/a IBB&A, Mr. Sellars & Mr. Greene on the HUD-1 final settlement statement prepared by 1st Choice Escrow[7]. The HUD-1 shows the Buyer as *"Auxier Financial Group LLC, dba IBB&A."* Further at the time of execution of the original purchase and sale agreement on March 19th, 2009 the for-profit corporation that Defendants' refer to as *"IBB&A was a for-profit corporation, organized in Washington in April 2009"* (See MSJ Pg. 9, Line 1) was not yet in existence. Plaintiff added the International Business Brokers & Affiliates as a DBA of Auxier Financial Group, LLC, with the Washington State Department of Licensing on March 10th, 2009[8] specifically to facilitate this transaction. Mr. Sellars and Mr. Greene executed several documents that clearly identified International Business Brokers & Affiliates (IBB&A) as a dba of Auxier Financial Group, LLC. Furthermore both Mr. Sellars and Mr. Green have dealt with Josh Auxier and Auxier Financial Group, LLC for almost 3 years, since March 19, 2009, and never claimed to Mr. Auxier that they did not know that Auxier Financial Group, LLC was not the real buyer/party in interest in their transactions. See Decl. of Josh Auxier (Dkt# 37-1) p. 12 line 22, through p. 19, line 16. ¶¶ 2.1 – 2.7, including all sub-¶¶ thereof.

Therefore, such statements made by Defendants, Mr. Sellars, and Mr. Greene as:

---

[7] A copy of the Final HUD-1 is attached hereto, marked **Exhibit S**, and incorporated by referenced as if fully set forth here.

[8] A copy of the confirmation from the WA DOL is attached hereto, marked **Exhibit T**, and incorporated by referenced as if fully set forth here.

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 11-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1    *"At no time during the negotiations did anyone represent that Mr. Greene was actually doing business with Plaintiff Auxier Financial Group, LLC. Id. At all times during these transactions, Mr. Sellars believed he was doing business with IBB&A. Sellars Decl. ¶ 11."*

2

3    are simply false, and inconsistent with document each of them has signed.  Another

4    false statement  in Defendant's Motion For Summary Judgment  is that when Ms. Brown-

5    Velez introduced Mr. Auxier to Mr. Sellars both Mr. Auxier and Ms. Velez were employed by

6    IBB&A. That is not only false but impossible because the corporation did not yet exist until

7    April 8, 2009, whereas Mr. Auxier and Mr. Sellers spoke in early to mid-March, prior to the

8    signing of the Purchase and sale agreements on March 19, 2009.  Mr. Auxier clearly stated

9    who he was and who Auxier Financial Group LLC dba IBB&A was.  The corporation

10   Defendants claim was the intended buyer was not in existence until April 8th, 2009, about three

11   weeks after the documents of purchase and Sale were signed on March 19, 2009, and .about 2

12   weeks after the closing of both transactions had occurred on March 27, 2009.

13   The provisions of the interrelated purchase and sale agreements signed March 19, 2009

14   were as follows: The closing date on both transactions was set for March 27, 2009.  Plaintiff

15   was to pay $31,000 plus reinstate the Sellars Loan before the scheduled foreclosure sale, which

16   was set within the next few days after March 19, 2009.   Buyer was to receive the statutory

17   warranty deed on the vacant adjacent parcel when the $31,000.00 was paid (See wording of

18   Ex. F, p.2, ¶ c &.e attached to the Decl. of Greene,)   Plaintiff agreed to wait to receive the

19   deed on the parcel known as 2525 Center Rd until the title had been cleared.  In the interim,

20   Plaintiff as buyer would take possession of the property, rent and manage it, maintain it, and

21   keep all rents.  The total amount needed for reinstatement to cure the default to stop the

22   pending foreclosure being processed by Northwest Trustee Services Inc. was not known at the

     time of the execution of the purchase and sale agreements on March 19, 2009, and therefore

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 12-

the amount of purchase price for 2525 Center Rd was left blank. The reinstatement figure from the trustee was later learned to be $17,020.71, which was paid.

Plaintiff disputes Defendants' statement that reads:

*"the parties agreed that once IBB&A paid the Loan in full, Mr. Greene and Mr. Sellars would transfer their interest in the Property to IBB&A for a price to be determined later. Greene Decl. ¶ 4 & Ex. C; Sellars Decl. ¶ 6 & Ex. D." (See MSJ Pg. 4 lines 1-3).*

There were never and are not now any agreements in writing or orally to pay additional payments to Mr. Greene or Mr. Sellars for the 2525 Center Rd property. The payments on the existing loan that encumbered the property were originally covered by provisions of the Form 34 Addendum, which is Ex. F, p. 6, attached to Decl. of Greene. The provisions of the Amendment to Purchase & Sales Agreement dated March 24, 2010, pertaining to 2525 Center Rd., (Ex. E, Decl. of Greene,) Item 1, reads precisely as follows:

> "1. Purchase Price – To be Determined by result of final discount and/or workout of encumbrances & liens on title."

The word "Determined" in that sentence means the price is "fixed" and "established" based on the amount to pay off the discount or workout of the encumbrances and liens. It doesn't state and it doesn't mean that the parties are to negotiate to a higher or additional amount to be paid to the sellers based on the final discount or workout of the encumbrances & liens on the property. Nor was there or is there any agreement to engage in any additional negotiations that need to be conducted at a later date.

There is no additional monetary consideration owed to Mr. Sellars or Mr. Greene under the terms of the interrelated transactions. Furthermore, the Sellars loan has been discharged

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 13-

1    against Mr. Sellars, via Mr. Sellars' Bankruptcy, and Mr. Greene was never personally liable

2    for the loan.  So there is no risk to either of them from the Note.

3         Concerning the claim of JPMorgan Chase Bank that it holds the original indorsed Note

4    signed by Mr. Sellars, the proof does not stand up as superior to the claims of the Trustees of

5    the respective . . . OC1 Trust and the . . . OA4 Trust, to hold all rights to the note, which

6    claims are based on the express written assignments to each of the securitized Trusts, prepared

7    and signed by authorized persons on behalf of JPMorgan Chase Bank, and then recorded by

8    JPMorgan Chase Bank.  The recitals in the respective recorded documents state that the

9    transfers were made in exchange for "For value received."   The main proof offered by Chase

10   Bank is the  Declaration of Karina Mirzoyan, which does not  state or show that she has

11   personal knowledge that Chase Bank possesses the valid and enforceable original note

12   instrument properly indorsed in this case.  Ms. Mirzoyan does not attest to where her office is

13   located, or where she was when she claims that she reviewed relevant business records that

14   enabled her to identify the particular note as an indorsed original, nor does she state her

15   training or experience, or length of employment in her position.  Her declaration states that she

16   signed it in Chatsworth, CA, which is part of the greater Los Angeles area located just west

17   and a bit north of Northridge, and west of Simi Valley. Yet the document she claims to verify

18   was reputedly kept in a vault in Louisiana. .She claims to be a "Senior Research Specialist"

19   who works "on issues that require familiarity with , and access to, original loan file documents

20   in Chase's possession."  She does not explain how she does that work, or what issues she

21   works on, and she does not state where the original loan files are kept, or how she acquires or

22   achieves access to the "original loan file documents" or how and why such documents are

23   even in "Chase's Possession" if the loan file documents were part of a large group of loans

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 14-

placed in a securitized "Remic" investment trust.   Ms. Mirzoyan states that she has "personal

knowledge of," or has "confirmed through my review of business records, the facts stated in

this Declaration and they are and (sic) correct." Her declaration does not support her personal

knowledge of the validity, enforceability, or origin of the document that she *arranged for its*

*delivery to our counsel, at the attention of Fred Burnside, via Federal Express on October 28,*

*2011.*" Ms. Mirzoyan states that *"Chase physically acquired the Note, endorsed in blank,*

*when it acquired the assets of Washington Mutual Bank from the FDIC, acting as receiver, in*

*September 2008.*" Ms. Mirzoyan never states when or how she learned any of that information

recited in her declaration except what she was told by someone else or read on a computer

screen. It is unlikely that she personally knows any information as to when or by whom the

alleged "indorsement" was affixed to the version of the Note attached to her Declaration. . She

does not state any factual foundation for her bare assertions, which are mere conclusions.

　　　Furthermore if the Sellars Loan Note was securitized in either of the two investment

trust, (either the ...OC1 Trust or the ...OA4 Trust) then it would be physically impossible for

it to have been part of the assets transferred by the FDIC to JPMorgan Chase Bank. when

examined in light of the past statements and governing documents of the "...OC1 Trust"[9] and

the governing documents of the "...OA4 Trust"[10] which specifically state:

> "On the Closing Date, the Company[11] shall deliver to and deposit with, or
> cause to be delivered to and deposited with, the Trustee or the Initial

---

[9] See Exhibit F Pg. 89 § 2.05 & - Delivery of Mortgage Files; this was a different entity from that identified in the Sept. 25, 2008 Whole Bank Purchase Agreement between Chase Bank and the FDIC.

[10] See Exhibit G, Pg. 63 § 2.05 - Delivery of Mortgage Files; The Initial Custodian listed in both documents is "Washington Mutual Bank, fsb." This was a different entity from that identified in the Sept. 25, 2008 Whole Bank Purchase Agreement between Chase Bank and the FDIC.

[11] The *"Company"* in both the "...OC1 Trust" PSA See Pg. 40, referring to *"The meaning specified in the introductory paragraph hereof"* the introductory paragraph being on Pg. 15 defines *"Company"* as "*WaMu Asset*

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320~ 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

*Custodian[12] the Mortgage Files[13] which shall at all times be identified in the records of the Trustee or the Initial Custodian, as applicable, as being held by or on behalf of the Trust."*

The *"certain assets"* allegedly acquired by Defendant Chase via the transaction with the FDIC cannot be identified because there is not a clear and concise description of these *"certain assets"*, as the schedule was referenced as defining the *"certain assets"* acquired by Defendant Chase Bank in the transaction was later described on the FDIC's website as a *"scrivener's error."[14]* Furthermore, the *"certain assets"* were assets of *"Washington Mutual Bank, Henderson, Nevada"* not that of the entity described in the governing documents of either the *"...OC1 Trust"* or the *"...OA4 Trust"* as the Initial Custodian *"Washington Mutual Bank, FSB."* Washington Mutual Bank, FSB was a completely separate entity based out of Park City, UT[15] and while both were bank holding companies of Washington Mutual, Inc. the only entity referred to in the Purchase and Assumption Agreement (See **Exhibit P**)[16] relied

---

*Acceptance Corp., as depositor"*; in the "OA4 Trust" PSA See Pg. 29 & Pg 11 for identical verbiage and definitions.

[12]The "Initial Custodian" is defined as *"Washington Mutual Bank, fsb"* in both the "...OC1 Trust" PSA See Pg. 46; and the "OA4 Trust" PSA See Pg. 36.

[13] The Definition of "Mortgage File" in both the "...OC1 Trust" (See Pg. 48) and "...OA4 Trust" (See Pg. 38) PSAs includes "The original Mortgage Note..."

[14]See http://www.fdic.gov/bank/individual/failed/wamu.html  *"ATTENTION: The reference to "Schedule 3.1a" in Article III, Paragraph 3.1, (page 9) of the WAMU P&A Agreement is a scrivener's error—there is no Schedule 3.1a"*

[15]See FDIC Cert# 32633 defining Washington Mutual Bank, Henderson, NV Date Established: 12/27/1988 http://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=32633

See FDIC Cert # 33891 defining Washington Mutual Bank, fsb, Park City, UT Date Established 4/15/1994 http://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=33891

[16] In response to Plaintiff's discovery request for production Defendants produced a copy of this agreement as Document # AUXIER001647 a copy of which is attached hereto marked **Exhibit P** and incorporated by reference as if fully set forth here.

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 16-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601

1   upon by Defendant Chase Bank, as *"Failed Bank"* is *"Washington Mutual Bank, Henderson,*

2   *Nevada."*

3       Even if Defendant Chase Bank were able to produce documentation which adequately

4   supported its claim that the document marked as **Exhibit A** attached to the Dec. of Mirzoyan

5   was the true original Note, was indorsed at the appropriate time, is the only document in

6   existence that has been relied upon for enforcement of the debt, and that that this version of the

7   Note was transferred to the appropriate entity at the appropriate time,  so as to be acquired by

8   Chase via FDIC Failed Bank purchase, due to Defendant Chase's subsequent actions described

9   below the Note is no longer adequate to provide Defendant Chase the authority to invoke the

10   power of sale originally granted by Mr. Sellars to Chicago Title Insurance Company via the

11   Deed of Trust as Defendant Chase Bank has willingly and voluntarily split off and sold or as

12   stated in the notarized and recorded documents *"grants, conveys, assigns and transfers"* *"For*

13   *Value Received"*, *"...all beneficial interest under that certain deed of trust..."*. In fact, this

14   occurred not once but twice; first on November 3rd, 2008 to *"...Lasalle Bank NA, as*

15   *Trustee...OC1 Trust"*[17]. Defendant Chase has confirmed that it does not dispute the authority

16   of *"Amy Weis"*, the name signed to the AoDT dated  November 3rd, 2008 when it stated

17   *"Chase does not dispute that Amy Weis had the authority to act as Attorney-in-Fact for Chase*

18   *when she signed the OC1 Assignment"* in its response to Plaintiff's discovery. Therefore an

19   authorized party acting on Chase's behalf knowingly offered the Assignment to be filed and

20   recorded in the Snohomish County Auditor's Office.

21       Defendant Chase then split off and sold the deed of trust for a second time on May 6th,

22   2010 *"For value received"* to *"...BofA as. . . Trustee for  ...OA4 Trust."* Defendant Chase has

---

[17]See **Exhibit H**, the AoDT from Chase to *"...OC1 Trust."*

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 17-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320 – 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601

confirmed that it does not dispute the authority of "Margaret Dalton", the name signed to the AoDT dated March 6th, 2010 when it stated *"Chase does not dispute that Margaret Dalton was a Vice President of JP Morgan Chase Bank with the authority to execute the OA4 Assignment"* in its response to Plaintiff's discovery. Therefore an authorized party acting on Chase's behalf knowingly offered the Assignment to be filed and recorded in the Snohomish County Auditor's Office.

Those acts by Defendant Chase Bank of splitting off and selling the deed of trust without properly transferring the Note caused a permanent and irreversible fatal flaw upon which two things occurred: 1) The DoT was reduced to a nullity[18] and nothing more than a cloud on the real property and 2) The Sellars' Note became an unsecured obligation. *"If the mortgage is split and sold separately from the loan; the result is an unsecured loan and a worthless mortgage. "*[19] The Note as an unsecured loan became uncollectable against Mr.

---

[18]*See Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872) (stating that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident"; adding that "[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity"); *In re Leisure Time Sports, Inc.* 194 B.R. 859, 861 (9th Cir. 1996) (stating that "[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures" and that, "[i]f the debt is not transferred, neither is the security interest"); *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952) (stating that assigning only the deed without a transfer of the promissory note is completely ineffective); *see also* Restatement (3d) of Property (Mortgages) § 5.4 (stating that "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the *obligation* that the mortgage secures") (emphasis added).

[19]*See Veal v. Am. Home Mortg. Serv., Inc.*, 450 B.R. 897, 912 (9th Cir. B.A.P. 2011). *"When a note is split from a deed of trust "the note becomes, as a practical matter, unsecured."* Restatement(Third) of Property (Mortgage) § 5.4 cmt. a (1997). Additionally, if the deed of trust was assigned without the note, then the assignee, *"having no interest in the underlying debt or obligation, has a worthless piece of paper."* Richard R. Powell, Powell on Real Property, § 37.27[2] (2000).Cf. In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) (finding that one who did not acquire the note which the mortgage secured is not entitled to enforce the lien of the mortgage); In re Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010)("Under New York law *'foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity.'"*) (quoting Kluge v. Fugazy, 536 N.Y.S.2d 92, 93 (N.Y. App. Div. 1988)).

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 18-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320–130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1    Sellars when *"...Mr. Sellers, Chase's debtor..."*[20] via his Ch. 7 Bankruptcy[21] was discharged

2    on August 11th, 2010.

3         This leaves Defendant BofA in both of its alleged capacities as the Trustee of the

4    "...OC1 Trust" and the "...OA4 Trust" in a less than favorable position as it seemingly was

5    duped by Defendant Chase into acquiring nothing more than a *"worthless piece of paper"*,

6    (See *Powell on Real Property,f.n.19)* that continues to be a cloud on title of 2525 Center Rd,

7    Everett, WA 98204, and an unenforceable security instrument, if it acquired anything at all.

8    The only thing that appears certain is that neither Defendant BofA in either of its capacities nor

9    Defendant Chase have produced evidence that supports their claims that they independently or

10   in some Principal/Agent relationship have the exclusive  rights or authority to foreclose on the

11   subject real property which would deprive Plaintiff of its rights in the subject property which

12   were validly obtained directly from Mr. Sellars and Mr. Green, because they do not possess or

13   control the note.

     **3.3.   Plaintiff Has Standing. – Both Constitutional and Prudential.**

14        Plaintiff vigorously disputes Defendants' lack of standing argument.  First, Plaintiff is

15   the real party holding the vendee's interest in 2525Center Rd, Everett, WA 98204.'  There is

16   evidence in this record that Plaintiff is the real owner of the vendee's interest in 2525 Center

17   Rd, Everett WA 98204.  The Plaintiff's property rights are based on written documents, all of

18   which were signed by Mr. Sellars and Mr. Greene.  Some of the documents are recorded, and

19   some are not and need not be recorded to be interpreted and enforced according to their terms.

20   The recorded documents include (a) a Statutory Warranty Deed conveying title to an adjacent

21   _____

22   [20] See MSJ Pg. 15 Line 21

     [21]In re: Joseph Thomas Sellars And Kristi Kay Sellars Case No. 10–14955–KAO,

Plaintiff's Response to Defendants'
Motion for Summary Judgment          - Page 19-

vacant piece of land next to 2525 Center Rd, Everett, WA 98204; and (b) a recorded

Memorandum of Contract for sale of 2525 Center Rd, Everett, WA 98204. An unrecorded but

relevant document is (c) the HUD-1 Final Settlement Statement dated Match 21, 2009, that

shows the accounting for the two interrelated transactions, and shows that the buyer is Auxier

Financial Group LLC dba IBB&A,. The Two interrelated Purchase and Sale Agreements were

signed the same day, March 19, 2009. Only Auxier Financial Group LLC dba IBB&A existed

at that time.. One Purchase and Sale Agreement was for a residence and lot (25425 Center Rd)

with an addendum form 34, and an Amendment dated about a year later on March 24, 2010.

The other purchase and sale agreement was for an adjacent parcel of vacant land, owned by

Mr. Sellars and Mr. Greene through an entity they co-owned. The two transactions were tied

together by the purchase and sale agreements; and both closed on the same date, March 27,

2009. See Declaration of Josh Auxier (Dkt#37-1), p.13, line 16, through p. 19, line 12, incl.,

and Exhibits B-1 through B-4 incl.

In addition, Auxier Financial dba IBB&A paid (1) $31,000.00 for the unencumbered

adjacent vacant land, and received the statutory warranty deed referred to above at the time the

disbursement was made to Mr. Sellars and Mr. Greene, when both purchase and sale

agreements were closed as provided on March 27, 2009. In addition Auxier Financial dba

IBB&A, paid (2) $17, 020.71, to cure the prior default of the sellers' loan to avoid a prior

foreclosure based on the sellers' loan, after which the sellers placed the buyer in possession

and the buyer assumed complete management control of the 2525 Center Rd property

including the authority to rent the property, and collect and keep the rent. In addition, under

the terms of the Purchase and Sale Agreement related to the 2525 Center Rd parcel, Auxier

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1   Financial dba IBB&A agreed (3) to pay the monthly payments on the Sellers's loan  pursuant

2   to provision in the Addendum Form 34.  See Id

3            The prior foreclosure of the sellers' loan had been brought by a <u>different foreclosing</u>

4   <u>trustee on behalf of a different reputed beneficiary</u> of the deed of trust that encumbered 2525

5   Center Rd who had clearly appeared on a preliminary title report as the <u>only secured creditor</u>

6   <u>entity</u> having an interest in the sellers' loan which encumbered the parcel <u>at the time Plaintiff</u>

7   <u>acquired an interest in the real property parcel in the spring of 2009. See Declaration of Josh</u>

8   <u>Auxier, (Dkt 37) p. 21, line 10 through p. 23</u>  Plaintiff authorized the reinstatement payment of

9   17,020.71, and thereafter made monthly payments on the loan initially to Washington Mutual

10  Home Loans, who had supplied Plaintiff with a copy of the note  (**Exhibit A-1 attached to**

11  **Decl. of Josh Auxier** and later to JPMorgan Chase Bank who claimed to be the successor to

12  Washington Mutual Bank by way of transfer from the FDIC.   Plaintiff paid a total amount of

13  $ 14,850.84 in monthly payments before the Amendment to Purchase and Sale Agreement was

14  signed on March 24, 2010.  Plaintiff has paid a total of $31,871.55 toward the "Sellars" loan

15  that encumbers 2525 Center Rd, Everett, WA 98204, since Plaintiff acquired its vendee's

16  interest in that property, as demonstrated above.

17           On March 24, 2010, the Amendment of Purchase and Sale Agreement dated  March 11,

18  2012, specifically changed the obligations of Auxier Financial Group, LLC dba IBB&A., and

19  removed  (terminated) the obligation of Plaintiff Auxier Financial dba IBB&A to  keep the

20  monthly payment on the Seller's loan current.

21           Plaintiff asserts that it has been greatly harmed and hindered in its redevelopment plans

22  for the combined parcels of property by the actions of  Defendants that has left in its wake a

23  very clouded and confused collection of encumbrances on the title of 2525 Center Rd, Everett,

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 21-

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

1    WA 98204, showing conflicting recorded assignment documents to two different investment

2    trusts that result in conflicting provisions of difference sections of different chapters of the

3    UCC, and the probable fact based on the evidence in the assignment of deed of trust

4    documents recorded by JPMorgan Chase Bank that the Note reputedly secured by the deed of

5    trust may no longer be a secured negotiable note at all. Plaintiff cannot proceed with its

6    intended redevelopment of the property while those encumbrances remain on the title.

7        Therefore, Plaintiff's rights as vendee of 2525 Center Rd have been damaged, and the

8    cause of the damage is directly tied to the behavior of JPMorgan Chase Bank in the making of

9    the assignments that cloud the title to 2525 Center Rd. and Bank of America NA, as successor

10   to LaSalle Bank, has relied on each of the two assignments at different times to attempt to

11   foreclose on the property at 2525 Center Rd, Everett, WA 98204 for the benefit of two

12   different investment trusts; and the last attempted non-judicial foreclosure was a clear

13   undeniable violation of the Washington Deed of Trust Act, Chapter RCW 61.24.

14       The clouded and confused title issue will not go away even if the Note is negotiable,

15   properly endorsed in blank, and held by JPMorgan Chase Bank The reason is that JPMorgan

16   Chase Bank knowingly made two successive assignments of the deed of trust for value

17   received, claiming in those assignment documents that it also was transferring the note to the

18   assignee in the respective assignments, but according to its own admission in the Declaration

19   of Karina Mirzoyan , Chase Bank retained possession of the note and did not transfer it when

20   the two successive assignments were made. Thus the note was intentionally separated from

21   the deed of trust by the actions of JPMorgan Chase Bank and became unsecured.

22       Defendants' own evidence shows that JPMorgan Chase Bank knowingly assigned

23   away the deed of trust and note to each trustee – First to LaSalle Bank, NA in November

Plaintiff's Response to Defendants'
Motion for Summary Judgment        - Page 22-

2008, as Trustee for the ...OC1 Trust, for value received; and later to Bank of America as successor of LaSalle Bank by merger as Trustee for the . . . OA4 Trust, for value received , while withholding the note in both transactions– all of which would be and is contrary to the relevant provisions of the Pooling And Servicing Agreements of the respective trusts, and thereby effectively separated the deed of trust from the note.  JP Morgan Chase Bank not only did that once – it did it twice by its own admission and its own documents, which it caused to be recorded. That fact pattern supports Plaintiff's argument that by its own behavior JPMorgan Chase Bank turned the Sellars Note from a  secured note into an unsecured note; and thus supports Plaintiff's position that no one can foreclose the deed of trust.

IV.   **Summary and Conclusion.**

Plaintiff has submitted substantial evidence, much of it from or supported by Defendants' own records and evidence that shows that Plaintiff is the owner of the vendee's interest in 2525 Center Rd, Everett WA 98204; and the outright owner of the interrelated vacant parcel conveyed  by deed  to Plaintiff by Mr. Sellars and Mr. Greene.  Based on that evidence Plaintiff is a real party in interest. Therefore, Defendant's motion for summary judgment to the contrary should be denied. Plaintiff has produced evidence which demonstrates and supports its constitutional and prudential standing. Plaintiff has been harmed  by Defendants' actions, which have directly caused the clouds on title that have hindered Plaintiff from proceeding with its plans for redevelopment of the property.

QLS has terminated the illegally commenced non-judicial foreclosure and there is no other pending foreclosure scheduled by anyone. Under the current circumstances Plaintiff's originally requested relief against Quality Loan Service and Bank of America for a temporary restraining order, and preliminary and  permanent injunctive  relief are not currently

**MUELLER & ASSOCIATES, INC., P.S.**
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

applicable because there is no immediately pending threat of foreclosure. However, the threat of foreclosure at a later time still remains. The Defendants may begin another unlawful foreclosure proceeding prior to the resolution of the inherently conflicting rights of the Defendants' in the Note, and Deed of Trust, based on the currently recorded assignment documents. Therefore, the Plaintiff's claims for injunctive relief should be dismissed without prejudice so as to preserve Plaintiff's right to defend against any subsequent attempts of any of the Defendants to perform an unlawful non-judicial foreclosure.

Plaintiff's request for Declaratory Judgment requiring any party who claims the right to enforce the original note and deed of trust must provide strict proof of its standing to do so by proving it is the "person entitled to enforce" the original note and proving it has the authority to instruct the trustee to foreclose on the deed of trust should not be dismissed because it requires claimant to follow applicable law. Plaintiff's claims for violation of the Washington State Consumer Protection Act are supported by the evidence of assignment documents created on behalf of the Defendant Banks that contain false statements for the purpose of supporting unlawful non-judicial foreclosures, when the assignees never became the holder of the original note, and thus never had the right as beneficiary to foreclose the deed of trust. The assignments were false, and violated the public policy of good faith and honesty in financial and business transactions. The Consumer Protection Claims of Plaintiff should not be dismissed..

Dated January 24, 2012..                    Respectfully submitted,

                                            /s/ Edward L. Mueller
                                            Edward L. Mueller, WSBA # 264
                                            of Mueller & Associates, Inc. P.S.
                                            Attorney For Plaintiff

MUELLER & ASSOCIATES, INC., P.S.
ATTORNEYS AT LAW
2320– 130th Avenue N.E. Suite E-250
Bellevue, Washington 98005
Ph. (425) 457-7600; FAX (425) 457-7601)

### CERTIFICATE OF SERVICE.

I hereby certify that on January 26, 2012, I caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send e-mail notification of such filing to the following participants:

Legal counsel for Defendants JP Morgan Chase Bank N.A.
and Bank of America, N.A.:
 Fred B. Burnside, WSBA # 32491
 Matthew Sullivan WSBA # 40873
 of Davis Wright Tremaine LLP
 1201 Third Avenue, Suite 2200
 Seattle, WA 98101-3045
 Tel. # (206) 622-3150
 Fax: (206) 757-7700
 e-mail: fredburnside@dwt.com
 e-mail: matthewsullivan@dwt.com

Dated. January 26, 2012.

      /s/  Edward L. Mueller
      Edward L. Mueller, WSBA # 264

Plaintiff's Response to Defendants'
Motion for Summary Judgment  - Page 25-